The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Johnny Lee TORAND a/k/a John Lee
Torand, Defendant-Appellee.

No. 80SA307.

Supreme Court of Colorado,
En Banc.

Jan. 26, 1981.

J. E. Losavio, Jr., Dist. Atty., Amy S. Isaminger, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Alez J. Martinez, Pueblo, for defendant-appellee.

QUINN, Justice.

The People in this interlocutory appeal challenge the ruling of the district court suppressing as evidence a high school graduation ring and a Kodak 110 pocket-size camera seized from the defendant's apartment in Pueblo, Colorado, on December 24, 1979, during a search pursuant to warrant. These items previously had been taken from a woman's apartment during the perpetration of burglary and sexual assault. The district judge concluded that the police obtained knowledge of these items in an illegal manner by exceeding the scope of a prior consent search of the defendant's apartment and, therefore, the search warrant authorizing their seizure was the fruit of the prior illegality. We reverse the suppression order and remand with directions.

I.

The defendant is charged in two separate cases in the Pueblo District Court and the facts pertinent to this appeal grow out of separate suppression orders entered by two different judges. In this case the defendant is charged with the crimes of sexual assault in the first-degree, section 18–3–402, C.R.S.1973 (1978 Repl.Vol. 8), and first-degree burglary, section 18–4–202, C.R.S. 1973 (1978 Repl.Vol. 8), allegedly committed on December 10, 1979 in Pueblo, Colorado (the sexual assault case). The defendant is charged in a separate case with a burglary committed at about 12:20 a. m. on December 24, 1979 (the December 24 burglary case). In this latter burglary several items were taken from a home located at 1916 West Street in Pueblo, including a shotgun, a leather gun carrying case, a Pentax 35 millimeter camera, a cassette recorder and a black flight bag.

Shortly after the December 24 burglary Officer Ortiz of the Pueblo Police Department received a dispatch conveying a general description of a prowler in the area of his patrol. The officer, who did not know of the December 24 burglary, observed the defendant carrying a black flight bag and a rifle case. The defendant matched the general description of the prowler and the officer stopped the defendant, obtained his name and address, and then permitted him to leave. About 40 minutes thereafter fellow officer Goddard, who had previously investigated the burglary at 1916 West Street, told Officer Ortiz about it and described the items taken in that burglary. After discussing Ortiz' prior encounter with the defendant both officers decided to go to the defendant's apartment and question him. They arrived there at about 2:20 a. m. and by prearrangement met a third officer, Frank Grubb. They told the defendant they wanted to talk to him about a burglary and advised him of his *Miranda* rights. The defendant asked them to enter the apartment and, upon being told that they were looking for a shotgun and a 35 millimeter camera, he orally consented to a search of his apartment for these items. The three officers conducted a search of the apartment and gathered up several articles including the shotgun, the gun carrying case, a black flight bag, a cassette player, some knives, and binoculars. All these items were placed by the officers on the top of or next to the dresser in the apartment. The officers mentioned that they had not yet located the Pentax 35 millimeter camera, whereupon the defendant, as found by the court below, "opened a dresser drawer where the camera was located" and it was seized.

During the search Officer Grubb came upon a shaving kit in the bathroom and opened it. Inside the kit he observed a high school graduation ring with the inscription "1969 Frazier" and the initials "D.A.B." He placed the ring back in the shaving kit and then put the kit on the dresser. A Kodak 110 camera also was found but the exact location of the discovery is unclear. It was either placed on the dresser after its discovery or had been on the dresser throughout the search. Upon completion of the search the police took with them most of the items they had placed on or near the dresser. However, they did not take the Kodak 110 camera and the high school ring. The defendant was taken to jail and charged with the burglary committed earlier that evening.

At about 7:00 a. m. on December 24 Officer Goddard, who had previously investigated the sexual assault case, contacted the victim and learned from her that a high school graduation ring and a Kodak 110 pocket camera had been taken from her apartment during the criminal episode on December 10. The graduation ring and the Kodak camera matched the objects observed at the defendant's apartment during the earlier consent search. Based on the observations during the consent search and the sexual assault victim's description of the property taken from her residence, Goddard obtained a search warrant for the defendant's apartment. The Kodak 110 camera and the high school graduation ring were seized. The defendant thereafter was charged with first-degree sexual assault and first-degree burglary committed on December 10, 1979.

In the December 24 burglary case the defendant sought an order suppressing all evidence seized by the police from his apartment during the consent search. Judge Phelps of the Pueblo District Court denied the motion as to the shotgun and its carrying case as well as the Pentax 35 millimeter camera, but granted the motion as to all other items "taken from the defendant's apartment." In his ruling Judge Phelps concluded that the defendant's consent was limited to the shotgun and the Pentax 35 millimeter camera and did not include any other items.[1]

In the instant case the defendant requested Judge Robb of the Pueblo District Court to suppress the high school graduation ring and the Kodak 110 camera. In ruling on this motion Judge Robb expressly adopted Judge Phelps' suppression order, which was admitted and received into evidence during the suppression hearing. Judge Robb granted the defendant's motion to suppress. He concluded that, based on Judge Phelps' order of suppression, any knowledge of the ring would have been obtained during an illegal search and, therefore, such knowledge could not be used to support the subsequent search warrant. With respect to the Kodak 110 camera he ruled that even if it had been observed in plain view during the consent search, it could not have been seized at that time and, therefore, knowledge of that item similarly could not be used as the basis for the subsequent warrant.[2]

1. Implicit in Judge Phelps' order is the determination that the consent to search for the shotgun included the consent to search for its carrying case. The propriety of seizing the carrying case under the consent is not questioned in this appeal by either party.

2. The pertinent part of Judge Robb's order of suppression provided as follows:
   "Officers Goddard, Grubb and Ortiz used information gained in the unlawful search of Defendant's apartment at 2:20 a. m. on December 24, 1979 as a basis for obtaining the Search Warrant that was executed at 11:42 a. m. on December 24, 1979. Clearly Officer Grubb's search of a shaving kit found in the Defendant's bathroom which revealed a high school ring was a part of the general exploratory search found unlawful by Judge Phelps. With regard to the 110 camera the People argue that the camera was in plain view on Defendant's dresser while the Officers lawfully searched for the shotgun and 35 mm. camera. Therefore, the 110 camera could lawfully be seized thereafter pursuant to the Search Warrant issued in this case. Based upon the testimony given by the only witness called by the People the Court concludes that the 110 camera was placed upon the dresser with other items seized by either Officer Ortiz or Grubb. Assuming, however, that the 110 camera had in fact been located on the

We conclude that the court in this case misapprehended the standards governing consent searches and plain view discoveries. Accordingly, we reverse and remand the case to the district court for application of the appropriate principles in resolving the defendant's suppression motion.

## II.

■ The question whether a consent to search is voluntary is an issue to be determined from the totality of circumstances. *E. g., Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *People v. Traubert*, Colo., 608 P.2d 342 (1980). The evidence at the suppression hearing in the December 24 burglary case was in conflict on this issue. Judge Phelps found that the defendant did indeed intelligently, knowingly, and voluntarily consent to the search and limited his consent to the search for the shotgun and the Pentax 35 millimeter camera. Judge Robb adopted *in toto* this finding of fact and we will not disturb it in this proceeding. The central issue here relates not to findings of fact but instead to the application of legal principles to those findings.

■ A voluntary consent to search is a waiver of whatever right the consenting person had to prevent the police from searching. *E. g., Schneckloth v. Bustamonte, supra*. Such consent may be confined in scope to specific items, *e. g., United States v. Dichiarinte*, 445 F.2d 126 (7th Cir. 1971); *Honig v. United States*, 208 F.2d 916 (8th Cir. 1953); *People v. Billington*, 191 Colo. 323, 552 P.2d 500 (1976); *People v. Harwood*, 74 Cal.App.3d 460, 141 Cal.Rptr.

519 (1977); *People v. Schmoll*, 383 Ill. 280, 48 N.E.2d 933 (1943), or may be restricted to certain areas or locations, *e. g., United States v. Dichiarinte, supra; United States v. Taibe*, 446 F.Supp. 1142 (E.D.N.Y.1978), aff'd, 591 F.2d 1333 (2d Cir. 1978), *cert. denied*, 444 U.S. 1071, 100 S.Ct. 1013, 62 L.Ed.2d 752 (1980); *People v. Billington, supra; Gonterman v. State*, 358 So.2d 595 (Fla.App.1978); *Love v. State*, 144 Ga.App. 728, 242 S.E.2d 278 (1978); *People v. Sanders*, 44 Ill.App.3d 510, 3 Ill.Dec. 208, 358 N.E.2d 375 (1976); *State v. Drouhard*, 31 Or.App. 1083, 572 P.2d 331 (1977); *State v. Johnson*, 71 Wash.2d 239, 427 P.2d 705 (1967), or otherwise may be limited in purpose and time, *e. g., United States v. Dichiarinte, supra; People v. Johnny V.*, 85 Cal. App.3d 120, 149 Cal.Rptr. 180 (1978). Where, as here, the consent is confined to certain items, the search itself likewise must be limited to the terms of the consent. Under such circumstances the search must be restricted to those objects and areas which are likely to contain the articles sought. *E. g., United States v. Dichiarinte, supra; United States v. Taibe, supra; People v. Schmoll, supra; C. Whitebread, Criminal Procedure* § 10.03 (1980). Police officers may not obtain a consent to search on the representation that they intend to look for specified items and then use that consent as a license to conduct a general exploratory search.

■ When, however, the police are legitimately on the premises pursuant to a consent to search, they may seize the objects sought as well as other incriminating

---

dresser at all times during the search by the three officers the People's argument based on the plain view doctrine is without merit. The People have cited to the Court *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996 (1963) in support of this argument. The language in that case found on page 323 [35 P.2d 996] of the Colorado Reporter is contrary to their argument:

" 'It was against just such exploratory searches that the Fourth Amendment was specifically directed. On the other hand, it appears from the authorities that if an officer is conducting a search, either under a valid search warrant or incident to a valid arrest where the search is such as is reasonably designed to uncover the articles for which he is looking and in the course of such search discovers *contraband or articles the possession of which is a crime*, other than those for which he was originally searching, he is not required to shut his eyes and refrain from seizing that material under the penalty that if he does seize it it cannot be admitted in evidence. See *Harris v. United States*, [390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067] supra, and *United States v. Rabinowitz*, [339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653] supra.' "The 110 camera was not contraband and it wasn't a crime to possess such an article."

evidence in plain view. *E. g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 5̄4 (1971). A plain view seizure must satisfy the following requirements: there must be a prior valid intrusion; the discovery of the evidence must be inadvertent; and the officer must have good reason to believe that the exposed item is incriminating—that is, there must be some nexus between the item to be seized and criminal behavior. *E. g., Coolidge v. New Hampshire, supra; People v. Harding*, Colo., 620 P.2d 245 (1980); *People v. Gurule*, 196 Colo. 562, 593 P.2d 319 (1978). The police are not expected to turn their eyes away from an article plainly visible merely because its incriminating character is not presently apparent to them. *E. g., Coolidge v. New Hampshire, supra; Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *People v. Billington, supra*. Knowledge of the article's location, when supplemented by information establishing its connection with a crime, legitimately may serve as support for the issuance of a search warrant for its seizure. *See, e. g., Zurcher v. Stanford Daily*, 436 U.S. 547, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978); Crim.P. 41(b)(5).

### III.

In suppressing the high school graduation ring the court concluded that its discovery "was a part of a general exploratory search found unlawful by Judge Phelps" in connection with the December 24 burglary case. The factual basis for this conclusion is unclear. In addition, the record does not reflect that the court in so concluding gave any consideration to the controlling principles of consent searches and plain view discoveries previously discussed.

In the December 24 burglary case Judge Phelps found that the items taken by the police in the consent search were the following: a shotgun, the gun carrying case, the Pentax 35 millimeter camera, a black flight bag, a cassette player, knives, and binoculars. Having concluded that the seizure of the shotgun, the gun carrying case, and the Pentax 35 millimeter camera were within the scope of the defendant's consent, Judge Phelps denied the suppression of these items but ordered that "all other evidence taken from the defendant's apartment" be suppressed. Neither the high school ring nor the Kodak 110 camera were actually *taken* from the defendant's apartment and, therefore, these items were not encompassed by Judge Phelps' suppression order. That suppression order neither expressly nor impliedly resolved the issue whether knowledge of the ring was obtained in the course of an unreasonable exploratory search.

The central inquiry in regard to the search of the shaving kit is whether the police had already located the Pentax camera before the shaving kit was opened.[3] If the police already had found the camera before opening the shaving kit, then the search of the kit would have been improper as exceeding the scope of the consent. The defendant's consent to search for the shotgun would afford no basis to examine the interior of a shaving kit. *See, e. g., U. S. v. Dichiarinte, supra; People v. Schmoll, supra*. However, a shaving kit of sufficient size might well serve as a hiding place for a stolen camera.

The suppression of the Kodak 110 camera is subject to the same infirmity as the suppression of the ring.[4] The Kodak camera was not included within Judge

---

**3.** Although there was testimony at the suppression hearing before Judge Robb that the ring was observed while the officers were looking for the Pentax camera, we are unable to ascertain from the record whether the parties focused on the sequence of the discovery as a significant aspect of the defendant's motion to suppress. That motion was couched in broad and general terms. Certainly the suppression order does not address the issue of the sequence of the discovery. Under these circumstances we believe the trial court should make those factual determinations essential to a resolution of this matter.

**4.** There was also testimony at the suppression hearing before Judge Robb that knowledge of the Kodak 110 camera was acquired prior to the discovery of the Pentax camera. However, as in the case of the ring, the court did not address the sequence of this discovery.

Phelps' suppression order in the December 24 burglary case, nor was there any determination that knowledge of this article was obtained in the course of an exploratory search. Moreover, the court in the instant case suppressed the camera for the alternative reason that the plain view doctrine was not applicable to evidentiary items. For its conclusion the court relied on a statement in *Hernandez v. People*, 153 Colo. 316, 385 P.2d 996 (1963), that authorized a plain view seizure of "contraband or articles the possession of which is a crime . . . ." 153 Colo. at 324, 385 P.2d at 1000. The *Hernandez* case was decided prior to the United States Supreme Court's decision in *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), which clearly rejected "the mere evidence limitation" on lawful searches:

> "Nothing in the language of the Fourth Amendment supports the distinction between 'mere evidence' and instrumentalities, fruits of crime, or contraband. On its face, the provision assures the 'right of the people to be secure in their persons, houses, papers, and effects' . . ., without regard to the use to which any of these things are applied. This 'right of the people' is certainly unrelated to the 'mere evidence' limitation. Privacy is disturbed no more by a search directed to a purely evidentiary object than it is by a search directed to an instrumentality, fruit, or contraband." 387 U.S. at 301, 87 S.Ct. at 1647, 18 L.Ed.2d at 789.

Thus, there is no constitutional prohibition against using knowledge of "mere evidence" obtained in the course of a valid consent search. *See, e. g., United States v. Truitt*, 521 F.2d 1174 (6th Cir. 1975); *United States v. Odland*, 502 F.2d 148 (7th Cir. 1974), *cert. denied*, 419 U.S. 1088, 95 S.Ct. 679, 42 L.Ed.2d 680 (1974).

■ If the police officers' observations of the Kodak 110 camera and the high school ring were validly made during that phase of the search directed to the discovery of the articles within the scope of the defendant's consent, those observations could be utilized to support the issuance of a search warrant for those articles.[5] On the other hand, if these observations took place after the discovery of the two articles for which the consent to search was given, or if these observations were made in a manner that exceeded the scope of that consent, then these observations would be rendered invalid as the product of an illegal search. Neither the suppression order in the December 24 burglary case nor the order in this case resolved these issues.

The ruling is reversed and the cause remanded to the district court with directions to determine the defendant's motion to suppress in accordance with the appropriate standards relating to consent searches and plain view discoveries. The court in its discretion may receive additional evidence if necessary to the proper resolution of this matter.

ROVIRA, J., does not participate.

---

5. In the December 24 burglary case Judge Phelps suppressed only those items which were taken from the apartment and were not within the scope of the consent. Under this ruling the illegal seizure of these items did not affect the prior legal seizure of the shotgun, its carrying case, and the Pentax 35 millimeter camera, all of which were within the scope of the consent. By a parity of reasoning, plain view discoveries during that phase of the search to which the defendant consented likewise would not be affected by the later unlawful seizure of articles not within the scope of the consent. *Cf. People v. Little*, Colo., 598 P.2d 140 (1979) (plain view seizure of travel bag and plastic bags protruding from open compartment not invalidated by subsequent illegal search of closed zippered compartments of bag); *Wimberly v. Superior Court*, 16 Cal.3d 557, 547 P.2d 417, 128 Cal. Rptr. 641 (1976) (probable cause search of interior of automobile and seizure of contraband therein not vitiated by subsequent illegal search of trunk).