The PEOPLE of the State of Colorado, Plaintiff-Appellant,

v.

Johnny Lee TORAND, also known as John Lee Torand, Defendant-Appellee.

No. 81SA107.

Supreme Court of Colorado, En Banc.

July 20, 1981.

Gus F. Sandstrom, Jr., Dist. Atty., Michael S. Kupecz, Deputy Dist. Atty., Pueblo, for plaintiff-appellant.

Greg Walta, Colorado State Public Defender, Denver, Alex J. Martinez, Deputy State Public Defender, Pueblo, for defendant-appellee.

ROVIRA, Justice.

In this second interlocutory appeal, the People challenge the ruling of the district court suppressing as evidence a high school graduation ring and a Kodak 110 pocket-size camera seized from the defendant's apartment in Pueblo, Colorado, on December 24, 1979, during a search pursuant to warrant. We reverse.

These same items had been the subject of a prior suppression order appealed to this court in *People v. Torand*, Colo., 622 P.2d 562 (1981). There, the district judge had concluded that the police obtained knowledge of the evidence at issue in an illegal manner by exceeding the scope of a consent search of the defendant's apartment. In resolving the first interlocutory appeal, we reversed the trial court and remanded with directions to determine the defendant's motion to suppress in accordance with appropriate standards governing consent searches and plain view discoveries.[1]

We noted in *People v. Torand, supra,* that during the police search of the defendant's

---

[1] An extensive discussion of the underlying facts in this case is set forth in *People v. Torand, supra.*

premises, conducted as a result of his limited consent, after having discovered a shotgun which the officers had good reason to believe was stolen in a recent burglary, one of the officers came upon an open shaving kit in the bathroom. He there saw and temporarily removed a high school ring with certain identifying inscriptions that subsequently connected the defendant to another crime. Neither the ring nor the 110 camera was removed from the premises at the time of the initial search. They were seized later after police knowledge of their location helped support probable cause for issuance of a search warrant. The test to be applied on remand was set forth as follows:

> "If the police officers' observations of the Kodak 110 camera and the high school ring were validly made during that phase of the search directed to the discovery of the articles within the scope of the defendant's consent, those observations could be utilized to support the issuance of a search warrant for those articles. On the other hand, if these observations took place after the discovery of the two articles for which the consent to search was given, or if these observations were made in a manner that exceeded the scope of that consent, then these observations would be rendered invalid as the product of an illegal search." (Footnote omitted.) *Id.*, 622 P.2d at 567.

In the suppression hearing on remand, the trial court found that a Pentax camera, which was one of the articles within the scope of the defendant's consent, had not yet been found at the time the police observed the class ring in a shaving kit and at the time the 110 camera was placed on a dresser "where it remained during the course of the search."[2] The trial court also found that upon looking into the shaving kit the investigating officer saw no Pentax camera, but that "he did see a quantity of jewelry which he described as two hands full, being both mens [sic] and womens [sic]

jewelry." He took the kit into another room where, looking through the jewelry, he took out the ring in question.

Based upon these findings, the trial court concluded that the police search of the shaving kit and an officer's superficial inspection of the class ring, after physically removing it from the shaving kit, exceeded the scope of defendant's consent because the ring had no connection with the items which were the immediate objects of the consent search and because the ring constituted evidence of other criminal activity yet to be linked directly to the defendant. Once having concluded that an unlawful search and seizure of the class ring formed the basis for the issuance of the search warrant, the trial court suppressed the ring and, as "fruit of the poisonous tree," the 110 camera.

In *People v. Torand, supra*, we set out in some detail the standards governing consent searches and plain view discoveries. We noted that while in consent searches, such as the one here, "the search must be restricted to those objects and areas which are likely to contain the articles sought," the police are not expected to close their eyes to an article plainly visible merely because its incriminating character is not presently apparent to them.

The "central inquiry" on remand in this case was whether the observation of the contents of the shaving kit and the 110 camera was made before or after the Pentax camera was located. *People v. Torand, supra*, 622 P.2d at 566. Once the trial court found that the Pentax camera was not located until after the ring and 110 camera were already observed, in light of the nature of the specific crime of burglary under immediate investigation and the police officer's very limited inspection of the class ring at issue, it follows that such observations could properly be utilized to support the issuance of a search warrant. A reasonable suspicion short of probable cause

2. In *People v. Torand, supra*, n. 4, we noted that at the first suppression hearing there was testimony that knowledge of the 110 camera was acquired prior to the discovery of the Pentax camera. The defendant, in his present brief, concedes that both the ring and 110 camera were observed before the Pentax camera was located.

will justify the superficial scrutiny of an object seen in plain view during the course of a valid search of a defendant's premises. *State v. Vaster*, 24 Wash.App. 405, 601 P.2d 1292 (1979); *State v. Driscoll*, 137 Vt. 89, 400 A.2d 971 (1979); *State v. Glover*, 60 Ohio App.2d 283, 396 N.E.2d 1064, 14 Ohio Op.3d 253 (1978); *State v. Proctor*, 12 Wash.App. 274, 529 P.2d 472 (1974); *State v. Sagner*, 12 Or.App. 459, 506 P.2d 510 (1973); *State v. Cernohous*, 295 Minn. 491, 205 N.W.2d 680 (1973). 2 *W. La Fave, Search and Seizure*, §§ 4.11(c), 6.7(b) (1978), § 8.1(c) (1981 Supp.); 1 *W. Ringel, Searches and Seizures, Arrests and Confessions*, § 6.5(a)(1) (2d ed. 1980).

The ruling is reversed.

DUBOFSKY, J., concurs in part and dissents in part.

ERICKSON and QUINN, JJ., dissent.

DUBOFSKY, Justice, concurring in part and dissenting in part:

I concur in part and respectfully, dissent in part.

I agree with Justice Quinn's dissenting opinion that the trial court followed the law of consent searches and plain view discoveries as outlined in *People v. Torand*, Colo., 622 P.2d 562 (1981), in suppressing the ring. However, I do not find in the trial court opinion sufficient findings of fact, or in the record, adequate evidence, to indicate that the 110 camera should have been suppressed. The police apparently discovered it in a dresser drawer, while they were searching for the Pentax camera, and placed it upon the dresser. I do not believe their actions exceeded the scope of a consent search, and as to the camera, I would concur with the result in the majority opinion.

QUINN, Justice, dissenting:

I respectfully dissent. The trial court's order of suppression is based on appropriate legal standards and its findings of fact are adequately supported by the record.

The majority holds that the officer's observations of the ring could properly be utilized to support the issuance of a search warrant. The operative principle of law relied on for this holding is that "[a] reasonable suspicion short of probable cause will justify the superficial scrutiny of an object in plain view during the course of a valid search of a defendant's premises." However, the evidence and the trial court's findings do not permit the application of this principle to the case at hand.

In our original opinion we outlined the law of consent searches and plain view discoveries in some detail:

"Where, as here, the consent is confined to certain items, the search itself likewise must be limited to the terms of the consent. Under such circumstances the search must be restricted to those objects and areas which are likely to contain the articles sought. *E. g., United States v. Dichiarinte*, [445 F.2d 126 (7th Cir. 1971)]; *United States v. Taibe*, [446 F.Supp. 1142 (E.D.N.Y.1978), aff'd, 591 F.2d 1333 (2d Cir. 1978), cert. denied, 444 U.S. 1071, 100 S.Ct. 1013, 62 L.Ed.2d 752 (1980)]; *People v. Schmoll*, [383 Ill. 280, 48 N.E.2d 933 (1943)]; *C. Whitebread, Criminal Procedure* § 10.03 (1980). Police officers may not obtain a consent to search on the representation that they intend to look for specified items and then use that consent as a license to conduct a general exploratory search.

"When, however, the police are legitimately on the premises pursuant to a consent to search, they may seize the objects sought as well as other incriminating evidence in plain view. *E. g., Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). A plain view seizure must satisfy the following requirements: there must be a prior valid intrusion; the discovery of the evidence must be inadvertent; and the officer must have good reason to believe that the exposed item is incriminating—that is, there must be some nexus between the item to be seized and criminal behavior." *People v. Torand*, Colo., 622 P.2d 562, 565–66 (1981).

In addition to setting forth these operative principles for resolution of the suppression issue, we noted that if the officer's observa-

tions of the highschool ring took place after the discovery of the shotgun and the Pentax camera, for which the consent to search was given, or if the observations of the ring were made in a manner that exceeded the scope of the consent, "then these observations would be rendered invalid as a product of an invalid search." *People v. Torand, supra,* 622 P.2d at 567.

On remand the trial court took additional evidence, as it was authorized to do, and expressly determined that Officer Grubb found a shaving bag on a shelf in the defendant's bathroom after the gun and gun case had already been located but before the Pentax camera had been found; that the shaving bag was open; that Officer Grubb looked in it and saw no camera but did see a large quantity of men's and women's jewelry; that Officer Grubb was unaware of the defendant's possible involvement in any other burglary or sexual assault at this time; that Officer Grubb removed the shaving bag from the bathroom shelf and took it into the living room where he thoroughly searched its contents; that Officer Grubb removed the ring from the shaving kit, examined it, and then questioned the defendant about the inscription and initials inside the ring. On the basis of these findings the trial court concluded that the manner in which the ring was removed from the shaving kit and examined in detail by Officer Grubb exceeded the scope of the defendant's consent and could not be justified under the plain view doctrine. Accordingly, the trial court granted the defendant's motion to suppress because the subsequent seizure, pursuant to warrant, of the class ring and Kodak 110 camera was the fruit of the initial illegality.[1]

The result reached by the majority ignores the trial court's detailed findings of fact and its judicious application of pertinent principles of law to those findings.

The majority simply substitutes its own assessment of the facts for that of the trial judge. The express findings of the trial judge negate any notion that the officer reasonably suspected the ring to have been connected somehow with criminal activity or that his examination of it was merely a superficial scrutiny of an object that otherwise was in plain view during the search for the Pentax camera. The majority's holding cannot be squared with the traditional and longstanding role of this court in matters of appellate review. I would affirm the order of suppression.

I am authorized to say that Justice ERICKSON joins me in this dissent.

---

1. The court found that several hours after the search, Officer Goddard contacted the victim of the sexual assault and, relying on Officer Grubb's observations of the ring, he questioned her about the ring. She stated that it was hers and had been taken in the burglary of her apartment on December 10, 1979, in the course of which she was sexually assaulted. The court also found that during Officer Goddard's discussion with the victim concerning the ring, she mentioned that the Kodak 110 camera had been taken from her apartment at the same time. Officer Goddard used this information in obtaining the subsequent search warrant and it was on this basis that the court concluded that the seizure of the Kodak 110 camera was the fruit of Officer Grubb's initial illegality in seizing the ring.