The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Virginia LINGO, Defendant–Appellee.

No. 90SA426.

Supreme Court of Colorado,
En Banc.

March 18, 1991.

Edward J. Rodgers, III, Dist. Atty., Steven B. Rich, Chief Deputy Dist. Atty., Cañon City, for plaintiff-appellant.

Meconi & Kiehnhoff, Brenda L. Jackson, Cañon City, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

The People filed this interlocutory appeal pursuant to C.A.R. 4.1 and section 16–12–102(2), 8A C.R.S. (1986 & 1990 Supp.), to challenge two separate orders by the trial court suppressing statements made by the defendant, Virginia Lingo, and evidence found during a strip search of the defendant. We do not address the trial court's initial rulings on May 29, 1990, and we affirm the trial court's suppression order of October 9, 1990.

## I.

On December 10, 1989, the defendant and codefendant, Edd Nestor, entered the Territorial Correctional Facility in Cañon City to visit an inmate. Upon entering the facility's lobby, they signed a consent form,[1] submitted to a pat-down search, and passed through a metal detector. No contraband was found on their persons. Immediately after they had proceeded from the lobby into the prison's visiting room, a correctional officer discovered a red balloon, containing a white powdery substance, on the lobby floor. The balloon had not been on the floor prior to the defendant and Nestor's entry into the facility, and no other visitors had passed through the lobby from the time the defendant and Nestor had entered until the discovery of the balloon. Based on this finding, two correctional officers, Officer Maestas and Lieutenant DeGroot, advised the defendant and Nestor that their visit was terminated. They were subsequently escorted to the lobby where Lieutenant DeGroot told them that they each had to undergo another pat-down search before they could leave the facility. Nestor then tried to swallow three white balloons that he had pulled out of his pocket, but Lieutenant DeGroot was able to retrieve the balloons before Nestor could swallow them, at which point Nestor was handcuffed.

Thereafter, the defendant was detained in the lobby with Nestor while the correctional officers waited for the arrival of Officer Henry, the female officer who was to search the defendant. While they were waiting, Officer Maestas told the defendant that "if she had anything, she might as well give it up." According to Officer Maestas, the defendant replied that a female officer would have to procure the contraband from her person in the restroom. On the basis of this statement to Officer Maestas, Lieutenant DeGroot handcuffed the defendant. Thereafter, Officer Henry arrived and conducted a second pat-down search of the defendant. No contraband was found as a result of that search.

The defendant and Nestor were then detained in the lobby of the correctional facility, still handcuffed, until Investigator Wold with the Colorado Department of Corrections arrived at the facility. Wold placed the defendant and Nestor under arrest, and advised them of their rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Following the *Miranda* advisement, Wold told the defendant that he had reason to believe she had contraband concealed on her person. According to Wold, the defendant again stated that she had contraband on her, but a female officer would have to remove it from her person. She then advised Wold that she wanted to speak with an attorney,

---

1. The consent form stated:
   As a condition of entering this facility, I hereby consent to any search of my person or of the person of any minor children accompanying me or of any vehicle that I may bring on the grounds of this facility. I acknowledge that I have [sic] the opportunity to leave the facility immediately had I chosen not to give this consent to search.

at which point all questioning ceased. The defendant was subsequently transported to the Fremont County Sheriff's Office where a strip search of the defendant was conducted and marijuana was found hidden in the defendant's undergarments.

The defendant was charged with one count of introducing contraband in the first degree in violation of section 18–8–203(1)(a), 8B C.R.S. (1986). The defendant filed a motion to suppress all statements made by her and the marijuana seized during the strip search. A suppression hearing was held on May 29, 1990. At the conclusion of the hearing, the court initially ordered that the defendant's statements must be suppressed, but not the fruits of the strip search. Specifically, the court ruled that the defendant's statement to Officer Maestas must be suppressed because it was an involuntary statement made during a custodial interrogation without a prior *Miranda* advisement. The court also suppressed the defendant's subsequent statement to Investigator Wold on the ground that the taint of the defendant's first statement was not dispelled by the *Miranda* advisement following her arrest. The court did not suppress the marijuana found during the strip search at the sheriff's office, finding that the search was within the scope of the voluntary consent given by the defendant when she signed the consent-to-search form at the correctional facility. Finally, the court ruled that the warrantless arrest of the defendant was invalid for lack of probable cause.

One day after its initial ruling, the trial court reconsidered the suppression motion *sua sponte*. The court reaffirmed its rulings that the defendant's arrest was invalid for lack of probable cause, that the defendant's statements must be suppressed, and that the defendant gave a valid consent to search. The court, however, vacated its decision not to suppress the contraband seized during the strip search of the defendant at the sheriff's office, and further ordered that another hearing be held on the narrow issue of the scope of the defendant's voluntary consent. The People did not appeal the court's ruling that no probable cause existed for the defendant's arrest or the suppression of the defendant's statements.

On October 9, 1990, a hearing was held on the single issue of the proper scope of the defendant's voluntary consent to search. Following the hearing, the court reversed its previous position and suppressed the contraband found on the defendant's person, ruling that the strip search at the sheriff's office did not fall within the scope of the defendant's consent, which was limited to the prison and prison grounds. The People subsequently filed this interlocutory appeal on October 19, 1990.

## II.

The People assert on appeal that (1) the trial court erred in ruling that the defendant's incriminating statement to Officer Maestas was an involuntary statement made during custodial interrogation; (2) the strip search of the defendant was justified either because (a) it was a lawful search conducted pursuant to a valid investigatory stop, or (b) prison visitors have a diminished expectation of privacy; and (3) the trial court erred in finding that the strip search of the defendant at the sheriff's office was beyond the scope of the defendant's consent. We address each of these issues in turn.

## A.

Under C.A.R. 4.1(b), interlocutory appeals must be filed no later than ten days "from the entry of the order complained of." "Failure to file a timely appeal is a jurisdictional defect." *People v. Donahue*, 750 P.2d 921, 922 (Colo.1988).

■ The trial court ruled on May 29, 1990, that the defendant's incriminating statement to Officer Maestas must be suppressed because it was an involuntary statement made during custodial interrogation without a prior *Miranda* advisement. This issue was not before the trial court at the subsequent motions hearing on October 9, 1990. Because the People did not appeal the trial court's suppression order regard-

ing the defendant's statement within the ten-day time limit required by C.A.R. 4.1(b), this court is without jurisdiction to hear this issue.

### B.

We next address the People's contention that the strip search was lawfully conducted pursuant to a valid investigatory stop. The trial court found that there was no probable cause to arrest the defendant, but made no findings as to whether the detention and search of the defendant was justified on less than probable cause. We conclude from the undisputed evidence in the record that the intrusion into the defendant's personal privacy exceeded the constitutional limits of a valid investigatory stop.

■■■ "An investigatory stop is a limited form of intrusion that may be justified with less than probable cause" without violating article II, section 7, of the Colorado Constitution, or the fourth amendment of the United States Constitution. *People v. Lagrutta,* 775 P.2d 576, 579 (Colo.1989). *See also Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Stone v. People,* 174 Colo. 504, 508, 485 P.2d 495, 497 (1971). "Where an officer conducts an investigatory stop, an accompanying search upon less than probable cause is permissible solely for the purpose of discovering weapons." *People v. Cagle,* 688 P.2d 718, 722 (Colo.1984). Unlike a search incident to a lawful arrest,[2] the only justification for a search during an investigatory stop is to neutralize the potential risk of physical harm confronting the investigating officer and others during the stop. *See Terry,* 392 U.S. at 29, 88 S.Ct. at 1884; *People v. Ratcliff,* 778 P.2d 1371, 1377 (Colo.1989); *People v. Melgosa,* 753 P.2d 221, 225 (Colo. 1988); *People v. Tate,* 657 P.2d 955, 959 (Colo.1983). Moreover, three conditions must be met before a person may be subjected to an investigatory stop: (1) there must be a specific and articulable basis in fact for suspecting that criminal activity has occurred, is taking place, or is about to

occur; (2) the purpose of the intrusion must be reasonable; and (3) the scope and character of the intrusion must be reasonably related to its purpose. *E.g., Ratcliff,* 778 P.2d at 1376; *Tate,* 657 P.2d at 958; *Stone,* 174 Colo. at 509, 485 P.2d at 497.

■■■ · Addressing the first condition for an investigatory stop, we find that the correctional officers had a specific and articulable basis in fact for suspecting that criminal activity was taking place. At the suppression hearing, Sergeant Danny Booher, a correctional technician at the facility, testified that he had made a full search of the facility's lobby just before the defendant and Nestor entered the lobby, and found nothing lying on the floor. Immediately after the defendant and Nestor proceeded from the lobby into the visiting room, Sergeant Booher checked the lobby area again and at that time discovered the red balloon lying on the floor. No other visitors had entered the lobby after the defendant and Nestor. Sergeant Booher further testified that he knew from his fourteen years of work experience at the correctional facility that balloons were commonly used to carry contraband into the facility. Based on these observations by Sergeant Booher, which were subsequently related to Officer Maestas and Lieutenant DeGroot, the correctional officers had a specific and articulable basis in fact to stop and temporarily detain the defendant and Nestor for the purpose of making reasonable inquiries.

■■■ Although there was a reasonable basis for the initial stop, the record conclusively shows that the second condition for an investigatory stop—whether the purpose of the intrusion was reasonable—was not met. It is undisputed that the correctional officers' sole purpose for detaining the defendant and Nestor, after terminating their visit, was to conduct a second pat-down search to discover whether they were carrying contraband into the facility. This purpose, however, was unreasonable, for, as previously stated, a search may be conducted during an investigatory stop

---

**2.** In *People v. Tottenhoff,* 691 P.2d 340 (Colo. 1984), this court stated: "Because an arrest based on probable cause is a reasonable consti-

tutional intrusion, a full search of the person arrested is *per se* reasonable and requires no additional justification." *Id.* at 344.

only for the purpose of discovering weapons. *Cagle,* 688 P.2d at 722. *See also Ratcliff,* 778 P.2d at 1379 (the officer's "purpose in preventing the destruction of any drugs could not serve as an independent basis for the frisk").

Since the detention and search of the defendant exceeded the constitutional limits of an investigatory stop, the strip search of the defendant must be justified either as a search incident to a lawful arrest or as a search within the scope of the defendant's voluntary consent. The People do not contend that the search was valid as incident to a lawful arrest. We, therefore, express no opinion on that issue.

## C.

We next address whether the trial court erred in finding that the strip search of the defendant conducted at the sheriff's office was beyond the scope of the defendant's consent.

■ A voluntary consent to search waives the fourth amendment warrant requirement. *People v. Reynolds,* 672 P.2d 529, 532 (Colo.1983). Such consent may be confined in scope to specific items, areas, or times. *Id.; People v. Torand,* 622 P.2d 562, 565 (Colo.1981). It is undisputed that the defendant voluntarily consented to be searched. Hence, the narrow question before us is whether the strip search exceeded the scope of the defendant's valid consent.

We find that section 17–19–101, 8A C.R.S. (1986), governs the scope of a prison visitor's consent to search. That section provides in relevant part:

(1) Any person who wishes to enter a correctional facility shall be asked, prior to entering the facility, to sign a consent form in which the visitor shall give his consent to be stopped and searched by a person of the same sex and to have his vehicle, if any, searched without probable cause *while in the correctional facility* .... A person who refuses to sign said form shall not be admitted to a correctional facility.

(2) At each entrance to a correctional facility, the executive director shall cause to be displayed at all times in a prominent place a sign ..., which shall read as follows:

"NOTICE
ANY PERSON WHO WISHES TO ENTER THIS CORRECTIONAL FACILITY SHALL BE ASKED, PRIOR TO ENTERING THE FACILITY, TO SIGN A CONSENT FORM IN WHICH SAID PERSON SHALL GIVE HIS CONSENT TO BE STOPPED AND SEARCHED BY A PERSON OF THE SAME SEX AND TO HAVE HIS VEHICLE, IF ANY, SEARCHED WITHOUT PROBABLE CAUSE *WHILE IN THE CORRECTIONAL FACILITY.* ANY PERSON WHO REFUSES TO SIGN SAID FORM SHALL NOT BE ADMITTED TO THIS CORRECTIONAL FACILITY."

(Emphasis added.)

In construing a statute, we are obligated to give effect to legislative intent. *People v. Guenther,* 740 P.2d 971, 975 (Colo.1987). "To discern that intent, we look first to the language of the statute itself, giving the statutory terms their commonly accepted and understood meaning." *Id.* The language of section 17–19–101 provides in unambiguous terms that visitors may be searched "while in the correctional facility." Thus, searches of prison visitors outside of the correctional facility on less than probable cause are unlawful. The clear language of section 17–19–101, confining searches of prison visitors to the correctional facility, acknowledges the justification for allowing such searches on less than probable cause, which is the need to prevent the introduction of contraband and weapons into the prison rather than to detect evidence of a crime. *See* W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 10.7(b), at 46 (1987).

■ All visitors to the Territorial Correctional Facility in Cañon City encounter the statutorily mandated notice in the parking lot prior to entering the facility. In the present case, the defendant was arrested at the correctional facility, then removed from

the facility to the sheriff's office where the strip search was conducted. We find that the strip search of the defendant, having occurred outside the correctional facility, exceeded the scope of the defendant's consent as defined by section 17–19–101.[3]

Accordingly, we affirm the trial court's order to suppress the contraband found as a result of the strip search.

ROVIRA, C.J., does not participate.

---

**3.** Because we hold that the strip search of the defendant exceeded the scope of the defendant's voluntary consent, we decline to address wheth-er strip searches of prison visitors are otherwise valid.