**William PACK, Plaintiff–Appellant,**

v.

**ARKANSAS VALLEY CORRECTIONAL FACILITY and Bill Price, Warden, Defendants–Appellees.**

**No. 94CA0144.**

Colorado Court of Appeals, Div. B.

Jan. 12, 1995.

Rehearing Denied March 16, 1995.

Mullen, Sadler & Felton, D. Dale Sadler, Denver, for plaintiff-appellant.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Cristina Valencia, Asst. Atty. Gen., Denver, for defendants-appellees.

Opinion by Judge DAVIDSON.

In this negligence action to recover damages for injuries sustained in a slip-and-fall accident, plaintiff, William Pack, appeals from the summary judgment entered in favor of defendants, the Arkansas Valley Correctional Facility and its warden, Bill Price. We affirm.

The complaint alleged that plaintiff, who has an unspecified disability, was injured in November 1992 when, as a visitor to the defendant correctional facility, he slipped and fell on ice and snow in the handicapped parking zone. Plaintiff further alleged that his injuries were caused by defendants' negligent failure to clear and maintain properly the handicapped parking area. The com-

plaint also alleged that this failure violated federal laws pertaining to public accommodations for persons with disabilities.

Defendants filed an answer and a motion for summary judgment, denying negligence and asserting, among other defenses, that the action was barred because sovereign immunity had not been statutorily waived for the type of injury alleged in the complaint and that the laws pertaining to civil rights for the handicapped did not apply to a negligence claim.

Attached to defendants' motion were two affidavits from security guards at the facility who had observed plaintiff's fall. Both witnesses stated that plaintiff's fall occurred in the parking lot for disabled persons as he walked toward the back of his vehicle.

In response, plaintiff asserted that summary judgment was precluded by genuine issues of material fact concerning defendants' duties to maintain the parking area and eliminate barriers to handicapped access as well as their alleged breach of those duties. Plaintiff also asserted that defendants' sovereign immunity had been statutorily waived for injuries arising from a public entity's operation of a correctional facility.

Based upon the parties' submissions, the trial court granted defendants' motion.

## I.

■ Plaintiff first contends that the trial court erred in concluding that sovereign immunity barred his claim. Specifically, he argues that sovereign immunity has been statutorily waived for an injury resulting from the negligent operation of a correctional facility and that maintenance of the parking lot was part of the operation of the facility. We disagree.

■ Initially, we note that the issue of sovereign immunity is one of subject matter jurisdiction and that, therefore, the proper procedure for determining whether a public entity is immune is governed by C.R.C.P. 12(b)(1) and not the summary judgment procedures of C.R.C.P. 56. *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993); *Cline v. Rabson,* 862 P.2d 1035 (Colo.App.1993). Neverthe-

less, on the record before us, we can address plaintiff's challenge to the trial court's ruling that, as a matter of law, sovereign immunity was not waived for the injury alleged in plaintiff's complaint. *See Kittinger v. City of Colorado Springs,* 872 P.2d 1265 (Colo.App. 1993); *see also People v. Terry,* 791 P.2d 374 (Colo.1990) (appellate courts need not defer to trial court's interpretation of statute).

In *Jones v. City & County of Denver,* 833 P.2d 870 (Colo.App.1992), a division of this court held that the General Assembly intended to retain sovereign immunity for claims for injuries resulting from dangerous conditions in public parking facilities. Plaintiff argues, that, nonetheless, even if the parking lot here is a public parking facility such that his claim would be barred under § 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A), his claim is not precluded because it falls within the specific waiver of immunity for the operation of a correctional facility set forth in § 24–10–106(1)(b), C.R.S. (1988 Repl.Vol. 10A). We do not agree.

### A.

The Colorado Governmental Immunity Act (CGIA) expressly provides that sovereign immunity is waived in an action for injuries resulting from a public entity's "operation" of any correctional facility. Section 24–10–106(1)(b). The term "operation" is defined in the CGIA as the act or omission of a public entity or public employee in the exercise and performance of the powers, duties, and functions vested in them by law with respect to the purpose of the facility. Section 24–10–103(3)(a), C.R.S. (1988 Repl.Vol. 10A).

Although defendants do not dispute that defendant Arkansas Valley Correctional Facility is a "correctional facility" operated by a public entity within the meaning of the CGIA, they argue that, regardless of whether the parking lot is part of the facility itself, the "operation" of such correctional facility does not include the maintenance of the parking lot. We agree.

■ We are aware that, when interpreting and applying statutory waivers of immunity, one of the basic purposes of the CGIA is to

permit injured claimants to seek redress for injuries caused by a public entity in specified circumstances. *See State v. Moldovan,* 842 P.2d 220 (Colo.1992). We also recognize that the scope of the immunity granted to the sovereign must be strictly construed. *See Bertrand v. Board of County Commissioners,* 872 P.2d 223 (Colo.1994).

■ Nonetheless, contrary to plaintiff's interpretation, the term "operation," as used in the CGIA, circumscribes the waiver of liability for such acts. Specifically, the term encompasses only defendants' acts or omissions in exercising the powers, duties, and functions vested in them by law *with respect to the purpose of the facility.* Accordingly, by the plain language of the CGIA, sovereign immunity is waived *only* if the activity at issue relates. to the facility's purpose. *Cf. Jenks v. Sullivan,* 826 P.2d 825 (Colo.1992) *overruled in part on other grounds, Bertrand v. Board of County Commissioners, supra; Howard v. City & County of Denver,* 837 P.2d 255 (Colo.App.1992). From our review of the relevant statutes, we conclude that any power or duty to maintain the visitors' parking lot which the Department of Corrections (DOC) might otherwise have is not so related.

■ The primary purpose of a correctional facility is to confine safely and effectively, for the duration of their sentence, persons convicted of crimes. Section 17–1–102(1.7), C.R.S. (1994 Cum.Supp.) (correctional facility is a "facility under the supervision of the [DOC] in which persons are or may be lawfully held in custody as a result of conviction of a crime.").

■ Further, although the DOC statutorily is authorized to manage, supervise, and control each correctional facility supported by the state, *see* § 17–1–104, C.R.S. (1986 Repl.Vol. 8A), the powers, duties, and functions incidental to that purpose relate to the custodial nature of the prison and generally are confined to the custodial facility itself. *See* §§ 17–20–114.5, C.R.S. (1994 Cum. Supp.), 17–20–122, 17–20–124, and 17–20–127, C.R.S. (1986 Repl.Vol. 8A); *see also* § 17–20–103, C.R.S. (1986 Repl.Vol. 8A) (duties of DOC as conservator of the peace); § 17–20–

116, C.R.S. (1986 Repl.Vol. 8A) (county or municipal roadwork by inmates); *People v. Lingo,* 806 P.2d 949 (Colo.1991) (strip search which took place in sheriff's office located outside the prison did not occur "in the correctional facility" and thus was outside the scope of the consent to search given by visitor to the prison).

Plaintiff's assertion to the contrary notwithstanding, although visitation at correctional facilities is contemplated and regulated, *see* §§ 17–19–101, C.R.S. (1986 Repl.Vol. 8A) and 17–20–124, the maintenance of visitor parking areas in order to facilitate prison visitation is not directly related to the purpose, as distinct from the operation, of a correctional facility. The statutory duties of the DOC, as they pertain to visitors, specifically are only to search those admitted to the facility and to restrict visitors' entry to the facility except as set forth by prison rules or by special permission. As such, these duties relate not to the visitor but to the purpose of the correctional facility to confine inmates safely and effectively.

Although the DOC has established and is maintaining a visitors' parking lot, such function merely is ancillary to the purpose of the correctional facility. Therefore, it is not part of the operation of a correctional facility as defined under the CGIA, and, as no explicit waiver of immunity has been granted, we may not expand that definition so as to create an implied waiver. *See State Department of Highways v. Mountain States Telephone & Telegraph Co.,* 869 P.2d 1289 (Colo. 1994).

### B.

■ Plaintiff argues, however, that, even though the "operation" of correctional facilities is explicitly addressed in § 24–10–106(1)(b), because correctional facilities are not specifically included in the list of public entities in the definition of "operation" contained in § 24–10–103(3)(a), a broader definition must be applied. We disagree. Because we perceive no legislative intent in the CGIA whatsoever to apply a different definition to correctional facilities than to jails or public hospitals, we have no basis upon which

to look outside the statute in order to define "operation."

## C.

Nonetheless, even if we assume, *arguendo*, that the General Assembly did not intend the definition of "operation" as set forth in § 24–10–103(3)(a) to apply to correctional facilities, we conclude that, in any event, the operation of correctional facilities does not include maintenance of the visitors' parking lot and, specifically, prevention of ice and snow accumulation.

Correctional facilities are grouped in the CGIA together with public hospitals and jails in § 24–10–106(1)(b), and their common denominator appears to be that each of these type of facilities is designed to house persons for continuous periods. *See State v. Hartsough*, 790 P.2d 836 (Colo.1990).

Certain other specified public facilities, including public water facilities and public swimming facilities, are grouped together for the purposes of waiving immunity for injury resulting from operation *or maintenance*. *See* § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A). This group does not include either correctional facilities, hospitals, or jails.

We conclude from this placement that, when the General Assembly intended to waive immunity for injuries resulting from improper maintenance, it did so explicitly. It has specifically determined the limited category of public facility which may be liable for injuries resulting from faulty maintenance and has separately listed those facilities.

Similarly, the General Assembly explicitly has limited the waiver of immunity for dangerous conditions resulting from the accumulation of ice and snow only on walkways leading to public buildings and only under certain circumstances. Moreover, even this very limited waiver does not apply to correctional facilities. *See* §§ 24–10–106(1)(e) and 24–10–103(1), C.R.S. (1988 Repl.Vol. 10A).

Further, immunity has not been waived for injuries resulting from accumulation of ice and snow in public parking facilities. *Jones v. City & County of Denver, supra.*

Statutes pertaining to the same subject matter must be construed *in pari materia* in order to further legislative intent and to avoid inconsistencies. *Walgreen Co. v. Charnes*, 819 P.2d 1039 (Colo.1991). Specific statutory language on a particular subject will prevail over general. *See State v. Borquez*, 751 P.2d 639 (Colo.1988).

Accumulation of snow and ice is defined specifically in the CGIA as a dangerous condition only under explicitly limited circumstances. Sovereign immunity has not been waived for injuries in public parking facilities, and sovereign immunity has not been waived for the maintenance of, or for dangerous conditions in, correctional facilities. Therefore, under the above principles of statutory construction, we may not assume that the prevention of such conditions, explicitly limited elsewhere in the CGIA, was intended by the General Assembly to be included implicitly as part of the operation of a correctional facility. *Cf. State Department of Highways v. Mountain States Telephone & Telegraph Co., supra.*

## II.

Plaintiff also contends that the trial court erred in dismissing his claim that defendants violated his federal civil rights as a disabled person because the accumulation of ice and snow effectively denied his access to their facility. Because the Americans with Disabilities Act (ADA) was not intended to create a remedy for a claim based on an isolated act of simple negligence, we agree that plaintiff's claim was properly dismissed.

The ADA is a remedial statute, designed to eliminate discrimination against the disabled in all facets of society. As a remedial statute, it must be broadly construed to effectuate its purposes. *Kinney v. Yerusalim*, 812 F.Supp. 547 (E.D.Pa.1993).

The federal statute upon which plaintiff relies, 42 U.S.C. § 12132 (1994) provides, in pertinent part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or

be subjected to discrimination by any such entity."

Pursuant to ADA authorization, the Department of Justice has promulgated regulations to establish a scheme intended ultimately to create a society providing physical accessibility to persons with disabilities. *Kinney v. Yerusalim, supra.* This obligation has been explained as follows:

> Once they arrive on the site, people with disabilities should be able to approach the building and enter the building as freely as everyone else. At least one route of travel to the entrance of the facility should be accessible for everyone, including people with disabilities.

Adaptive Environments Center, Inc., *ADA Title II Action Guide* 125 (1992).

 State correctional facilities are among the "public entities" required to make their facilities, services, and programs readily accessible to individuals with disabilities. *See Bonner v. Arizona Department of Corrections,* 714 F.Supp. 420 (D.Ariz.1989) *aff'd,* 9 F.3d 1067 (3d Cir.1993).

 A private right of action has been authorized for violations of § 12132 of the ADA, and in appropriate cases, compensatory damages may be awarded. *See Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (absent clear direction to the contrary by Congress, federal courts have the power to award any appropriate relief in a cognizable cause of action brought pursuant to a federal statute); *Pandazides v. Virginia Board of Education,* 13 F.3d 823 (4th Cir.1994) (every circuit that has addressed the availability of a private right of action under the federal Rehabilitation Act has held that a private right of action exists). *See also* Jones, *Overview & Essential Requirements of the Americans With Disabilities Act,* 64 Temple L.Rev. 471, 485 (1991) (the ADA incorporates by reference Rehabilitation Act's enforcement remedies, including compensatory damages).

There is no indication in the statute or federal regulations, however, that it was intended to provide a private right of action for injuries resulting from an isolated incident of simple negligence.

To the extent that 28 C.F.R. § 35.133(a) (1994) provides that "a public entity shall maintain in operable working condition those features of facilities that are required to be readily accessible to and usable by persons with disabilities," this requirement does not appear to apply to isolated instances. *See* 28 C.F.R. § 35.133(b) (1994) ("This section does not prohibit isolated or temporary interruptions in service or access due to maintenance or repairs.").

Although the obstruction here was caused not by repairs or maintenance, but by an alleged lack of maintenance, *i.e.,* failure to remove snow and ice properly, we conclude nonetheless that an isolated instance of negligence regarding the failure to maintain access routes, without more, is not covered by the ADA. *See* 28 C.F.R., Appendix A to Part 35 at 455 (1994) ("This paragraph [§ 35.133(b) ] is intended to clarify that temporary obstructions or isolated instances of mechanical failure would not be considered violations of the [ADA] or this Part.").

Because the federal regulations interpreting the ADA recognize that occasional instances of obstruction or failure are inevitable and that the ADA was intended instead to prevent consistent and discriminatory denial of access, we conclude that plaintiff did not state a claim for violation of the ADA. Therefore, the trial court properly dismissed plaintiff's claim for relief under the Americans with Disabilities Act.

The judgment is affirmed.

MARQUEZ and BRIGGS, JJ., concur.