Arthur M. NIETO, Plaintiff–Appellee and Cross–Appellant,

v.

STATE of Colorado and Department of Corrections, Defendants–Appellants and Cross–Appellees,

and

Marian Norman and Mike Farrow, Defendants and Cross–Appellees.

No. 96CA0982.

Colorado Court of Appeals, Div. II.

Oct. 2, 1997.

Rehearing Denied Oct. 10, 1997.

Certiorari Granted March 23, 1998.

Ozer and Ozer, P.C., Robert C. Ozer, Jill C. Harris, Denver, for Plaintiff-Appellee and Cross-Appellant.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Thomas C. Sullivan, Assistant Attorney General, Denver, for Defendants–Appellants and Cross–Appellees; and for Defendants and Cross–Appellees.

Opinion by Judge BRIGGS.

Plaintiff, Arthur Nieto, filed this civil action seeking damages for personal injuries allegedly caused by inadequate medical care provided to him while he was in prison. Defendants, State of Colorado and Department of Corrections (the state defendants), appeal the judgment entered on a jury verdict in favor of plaintiff and against them based on the negligence of their employees, including defendants Marian Norman, a prison nurse, and Mike Farrow, a prison guard (the individual defendants). Plaintiff cross-appeals the trial court's dismissal of his claims under 42 U.S.C. § 1983 (1994) against the individual defendants and of his claim of negligence against defendant Farrow, as well as the court's reduction of the jury's award against the state defendants to $150,000. We affirm the judgment against the state defendants in the amount of $150,000. We reverse the dismissal of the § 1983 claims against the individual defendants and remand for further proceedings.

The essential facts in the sequence of events leading to plaintiff's injuries are undisputed. While an inmate at a Colorado correctional facility, plaintiff sought treatment at the facility's medical clinic. He was given cold and flu medication by a nurse employed by the state defendants. Three days later, with the pain continuing and increasing, he returned to the clinic.

On this visit, plaintiff was seen by defendant Norman, another nurse employed by the state defendants as the medical coordinator of the facility. She instructed plaintiff to continue use of the medication already given him.

Several days later, plaintiff appeared at the clinic with continuing pain and a swollen right eye. Defendant Norman instructed

plaintiff to leave the clinic and indicated that, if he returned again, he would be disciplined.

Plaintiff nevertheless returned to the clinic a few days later because of worsening symptoms. He conveyed to the nurse on duty his belief that he was having a stroke. After briefly examining plaintiff, the nurse provided plaintiff with an antibiotic and a decongestant, directed him to continue use of the medication previously given him, and ordered him to return to the clinic the following day.

Plaintiff did not return the next day, but that evening he sought assistance from defendant Farrow, a prison guard. Farrow advised plaintiff to return to bed and apply hot compresses to his eye. Plaintiff unsuccessfully sought help from defendant Farrow at least twice more in the next three days.

Plaintiff was then found in his cell, unconscious and incontinent, his right eye bulging from its socket. He was taken to a hospital emergency room, where a doctor immediately diagnosed a severe sinus infection. Because of the complexity and severity of his condition, plaintiff was transferred to another hospital in a different location for treatment.

Further examination revealed that the sinus infection had spread to his right eye and to the base and frontal lobe of his brain. In the following months, plaintiff underwent an eye surgery, two sinus surgeries, and three brain surgeries. During this time he suffered a stroke and is permanently paralyzed on his left side.

Plaintiff filed suit against the state and individual defendants. The complaint asserted a professional malpractice claim against defendant Norman; a negligence claim against defendant Farrow; a claim based on *respondeat superior* against the state defendants; and § 1983 claims against the individual defendants. After the court dismissed all claims against the individual defendants, the case proceeded to trial against the state defendants based on the failure of their employees to provide plaintiff with adequate medical care. The jury found plaintiff had suffered damages in the amount of $1,800,-000. It assigned 80% of the fault to the state defendants and 20% to plaintiff, resulting in a judgment of $1,440,000. Acting pursuant to § 24–10–114(1)(a), C.R.S.1997, the court reduced the jury award to $150,000 and entered judgment in that amount.

On appeal, the state defendants contend the trial court erred in not dismissing the claim against them because: 1) plaintiff failed to file a timely certificate of review in accordance with § 13–20–602, C.R.S.1997; 2) they are immune from liability pursuant to § 24–10–106, C.R.S.1997, of the Governmental Immunity Act; and 3) they cannot be held liable under the doctrine of *respondeat superior* for negligence that essentially constituted the practice of medicine. On cross-appeal, plaintiff contends the trial court erred: 1) in concluding he had sued the individual defendants in their official, rather than individual, capacities and had thus failed to state a § 1983 claim against them for damages; 2) in applying the one-year statute of limitations set forth in § 13–80–103(1)(c), C.R.S.1997, to the claims against defendant Farrow; and 3) in reducing the judgment against the state defendants to $150,000 pursuant to § 24–10–114(1)(a), rather than entering the judgment in the amount awarded and limiting recovery to $150,000. We address each contention in turn.

## I.

The state defendants first contend that, while the trial court properly dismissed the claim for professional negligence against defendant Norman based on plaintiff's failure to file a certificate of review in accordance with § 13–20–602, it erred in not dismissing the claim against them on the same basis. We disagree.

Section 13–20–602 provides in relevant part as follows:

(1) In every action for damages or indemnity based upon the alleged professional negligence of ... a licensed professional, the plaintiff's ... attorney shall file with the court a certificate of review *for each ... licensed professional named as a party*, as specified in subsection 3 of this section, within sixty days after the service of the complaint, counterclaim, or cross claim *against such person* unless the court determines that a longer period is necessary for good cause shown.

. . . .

(4) The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim. (emphasis added)

When interpreting statutes we look first to the words and phrases used, which must be read in context and accorded their plain and ordinary meaning. *See People v. Valencia,* 906 P.2d 115 (Colo.1995); *American Respiratory Care Services v. Manager of Revenue,* 835 P.2d 623 (Colo.App.1992). When that meaning is unambiguous and the result neither absurd nor unjust, resort to legislative history or other means to determine intent is not only unnecessary, it is inappropriate. *See Ackerman v. Power Equipment Co.,* 881 P.2d 451 (Colo.App. 1994); *Frank v. Charnes,* 43 Colo.App. 217, 600 P.2d 124 (1979); *see also Dove Valley Business Park Associates v. Board of County Commissioners,* 923 P.2d 242, 248 (Colo. App.1995), *aff'd,* 945 P.2d 395 (Colo.1997)("It is for this court to enforce the statutes as written. If this does not correspond to the General Assembly's intent, it is for that body, not this court, to rewrite it."); *see generally* H. Hart & A. Sacks, *The Legal Process: Basic Problems in the Making & Application of Law,* (W. Eskridge & Frickey eds., 1994).

Section § 13–20–602 requires that a certificate of review be filed in an action based on professional negligence only "for each licensed professional named as a party," within sixty days of service "against such party." The state defendants are not licensed professionals. Hence, the plain language of the statute did not require that plaintiff file a certificate of review in his suit solely against the state defendants.

This result is neither absurd nor unjust. A licensed professional can be uniquely affected when named as a defendant in a malpractice case that leads to a settlement or adverse judgment. For example, dentists, doctors, and optometrists all may be subject to discipline if they fail to report to their respective governing boards the entry of a malpractice judgment against them or the settlement of a malpractice claim. And, if

reported, the underlying facts can then lead to discipline. *See* §§ 12–35–118(1)(j), 12–35–118(1)(p), and § 12–35–118(1)(q), C.R.S.1997 (dentists); §§ 12–36–117(1)(y) and 12–36–117(1)(p), C.R.S.1997 (doctors); and §§ 12–40–118(1)(k), 12–40–118(1)(r), and § 12–40–118(1)(s), C.R.S.1997 (optometrists); *see also* 42 U.S.C.A. §§ 11131 & 11151 (1995)(requiring that payments made in settlement or satisfaction of a judgment in a medical malpractice action or claim be reported to the National Practitioner Data Bank, with the information available if a physician seeks a license in a different state).

In contrast, a judgment or settlement against only the employer of a licensed professional does not require the licensed professional to file a report with a state governing board or with the National Practitioner Data Bank. As a result, the licensed professional is less likely to have the matter receive unwanted publicity, to be subject to any further disciplinary action, or to confront any questions or difficulties when applying for a license in another state.

In sum, requiring a certificate of review only for suits against licensed professionals strikes a balance between the unique impact on a licensed professional when sued individually and the burden on injury victims of complying with additional procedural requirements before discovery has even commenced. It is a balance we cannot call absurd or unjust.

Contrary to the state defendants' argument, the supreme court's decision in *Martinez v. Badis,* 842 P.2d 245 (Colo.1992) does not compel a different outcome. The court there was not presented with the question, and did not address, whether a certificate of review is required in a suit against a licensed professional's employer based on *respondeat superior.* Further, the court in *Martinez* was interpreting an earlier version of § 13–20–602, which did not specify that a certificate of review was to be filed for each licensed professional "named as a party." *See* Colo. Sess. Laws 1989, ch. 129, § 13–20–602 at 750. Likewise, the issue presented here was not before the federal district court in *Hill v. United States,* 751 F.Supp. 909

(D.Colo.1990), the other case relied on by the state defendants.

Contrary to the state defendants' further argument, our interpretation of § 13–20–602 does not render the certificate of review requirement meaningless for nursing malpractice claims. A plaintiff still must file a certificate of review to proceed on a claim against a nurse, or any other licensed professional, as a named party.

We therefore conclude the trial court properly determined that § 13–20–602 did not require plaintiff to file a certificate of review to proceed on his claim solely against the state defendants.

## II.

The state defendants next contend that, for two separate reasons, they were immune from liability pursuant to § 24–10–106 of the Colorado Governmental Immunity Act. We find neither persuasive.

## A.

■ The state defendants first assert that, contrary to the trial court's conclusion, the conduct of their employees allegedly causing plaintiff's injuries did not fall within the waiver of immunity under § 24–10–106(1)(b), C.R.S.1997, for the "operation" of a correctional facility. Their argument is premised on the definition of the term "operation," which encompasses defendants' acts or omissions that occur in exercising the powers, duties, and functions vested in them by law with respect to the "purpose" of the facility. See § 24–10–103, C.R.S.1997; Pack v. Arkansas Valley Correctional Facility, 894 P.2d 34, 37 (Colo.App.1995). They argue that the purpose of a correctional facility is to confine prisoners, not to provide medical care. We disagree.

The state defendants' argument overlooks that correctional facilities must house prisoners in a safe and effective manner. See Pack v. Arkansas Valley Correctional Facility, supra; Howard v. City & County of Denver, 837 P.2d 255, 257 (Colo.App.1992)("duties in keeping jail are to receive and safely detain every person duly committed therein"); DOC–Regulation 700–2 (inmates are entitled to access to medical services that maintain "basic health" through the provision of medical services).

Maintaining a prisoner's basic health is not solely a requirement of state law. The Eighth Amendment's proscription of cruel and unusual punishment also "establishes the government's obligation to provide medical care for those it punishes by incarceration." Estelle v. Gamble, 429 U.S. 97, 103, 97 S.Ct. 285, 291, 50 L.Ed.2d 251, 259 (1976); see Ramos v. Lamm, 639 F.2d 559, 574 (10th Cir.1980)(Eighth Amendment duty to provide inmate medical care "necessarily requires that the State make available to inmates a level of medical care which is reasonably designed to meet the routine and emergency health care needs of inmates").

We therefore conclude the operation of a correctional facility for purposes of § 24–10–106(1)(b) includes the provision of medical care necessary for basic health. Hence, because the conduct alleged here fell within that waiver of immunity, the trial court did not err in refusing to dismiss plaintiff's claim based on governmental immunity. Cf. Pack v. Arkansas Valley Correctional Facility, supra; Howard v. City & County of Denver, supra.

## B.

■ The state defendants next argue they are immune because the public employees who treated plaintiff, including the individual defendants, were themselves "immune." We conclude to the contrary.

A public entity is immune from liability for an injury arising from the act, or failure to act, of a public employee if the act is the type for which the public employee is personally immune from liability. Sections 24–10–106(2) and 24–10–106(3), C.R.S.1997.

In turn, a public employee is generally immune from liability for all claims that lie in tort or could lie in tort and that arise out of injuries sustained from an act or omission of such employee occurring during the performance of the employee's duties and within the scope of the employee's employment. Sections 24–20–105 and 24–10–118(2)(a),

C.R.S.1997; *see Yonker v. Thompson*, 939 P.2d 530 (Colo.App.1997).

As already noted, a public entity's immunity is waived for injuries arising in the course of the operation of a correctional facility. The conduct plaintiff has alleged in this case falls within the scope of that waiver.

Further, a public employee's immunity is waived pursuant to § 24–10–118(2), C.R.S. 1997, for acts that are willful and wanton. *See Zapp v. Kukuris*, 847 P.2d 150 (Colo. App.1992). The state defendants have not claimed immunity on this basis.

Instead, the state defendants base their claim to immunity on the contentions that: 1) the individual defendants were "immune" from liability because the actions against them were dismissed and 2) all other public employees who treated plaintiff were immune because plaintiff did not bring actions against those individual public employees. These arguments misconstrue the concept of immunity.

Sovereign, or governmental, immunity is a "bar" to suit that legally precludes the filing of an action against the immune public entity or public employee. *See* §§ 24–10–108 and 24–10–118, C.R.S.1997; *see generally Pino v. Higgs*, 75 F.3d 1461 (10th Cir.1996); *Black's Law Dictionary* 1386 (6th ed.1990). Hence, an individual defendant does not have "immunity" in this sense because a plaintiff's action against that individual is dismissed based on an affirmative defense unrelated to the Colorado Governmental Immunity Act. Likewise, one of several individuals who together caused an injury does not have "immunity" merely because a plaintiff chooses not to bring suit against that particular individual. *Cf. Richardson v. McKnight*, — U.S. —, —, 117 S.Ct. 2100, 2103, 138 L.Ed.2d 540, — (1997) ("[A] distinction exists between an 'immunity from suit' and other kinds of legal defenses.... [A] legal defense may well involve 'the essence of the wrong,' while an immunity frees one who enjoys it from a lawsuit whether or not he acted wrongly.").

Here, as the trial court noted in its order denying the state defendants' motion for judgment notwithstanding the verdict, the actions against the individual defendants were not dismissed because those defendants were immune from suit as a matter of governmental immunity. Rather, the action against defendant Norman was dismissed based on the affirmative defense of failure to file a certificate of review, and the action against defendant Farrow was dismissed based on the affirmative defense that a one-year statute of limitations barred the claim. Likewise, the state defendants do not argue that, had suit been brought against additional public employees, such as nurses and other medical staff who treated defendant, governmental immunity would have shielded them from the suit for wanton and willful conduct.

Therefore, because the state defendants' employees, including the individual defendants, were not personally immune from suit, the trial court did not err in refusing to dismiss the claim against the state defendants based on governmental immunity for their employees.

## III.

The state defendants' final contention is that they cannot be held liable under the doctrine of *respondeat superior*. They argue the conduct asserted as the basis for their liability essentially constituted the practice of medicine by defendant Norman and others under the supervision of a physician, and thus, under the "corporate practice of medicine" doctrine, they cannot be held liable. We again disagree.

Under the "corporate practice of medicine" doctrine articulated by the supreme court, a corporation such as a hospital cannot be licensed to practice medicine and thus cannot command or forbid any act by a doctor in the practice of medicine. Its relationship with a doctor it employs is necessarily that of an independent contractor. Hence, an entity employing a doctor cannot be held liable for a doctor's negligence based on *respondeat superior*. *See Moon v. Mercy Hospital*, 150 Colo. 430, 373 P.2d 944 (1962); *see also Freedman v. Kaiser Foundation Health Plan*, 849 P.2d 811 (Colo.App.1992).

However, the supreme court has refused to extend the doctrine to other employ-

ees, such as nurses. An employer can therefore be held liable for a nurse's negligence, so long as the nurse was one of its employees and was acting within the scope of employment. *See Bernardi v. Community Hospital Ass'n*, 166 Colo. 280, 443 P.2d 708 (1968). Consequently, the state defendants cannot avoid liability for the negligence of defendant Norman under the "corporate practice of medicine" doctrine.

The state defendants' argument is better understood as based on the separate "captain of the ship" doctrine, which limits the vicarious liability of an employer in certain limited circumstances. For example, the supreme court has determined that, once an operating surgeon assumes control in the operating room, the surgeon rather than the hospital is liable for the negligence of all persons working under the surgeon's supervision. *See Beadles v. Metayka*, 135 Colo. 366, 311 P.2d 711 (1957). It does not matter that those persons were employed and paid by the hospital. *See Spoor v. Serota*, 852 P.2d 1292 (Colo.App.1992); *Krane v. Saint Anthony Hospital Systems*, 738 P.2d 75 (Colo.App. 1987).

We conclude the doctrine is not applicable in the circumstances presented here. Plaintiff did not assert, and no evidence was presented indicating, that he was injured during surgery.

The only arguable relationship between plaintiff's injuries and a physician involved the prescription antibiotic provided to plaintiff by a nurse. The nurse provided the antibiotic pursuant to telephone instructions from a physician's assistant, who was working under the supervision of a doctor, who in turn was under contract with the correctional facility. The same doctor signed plaintiff's medical chart several days later, without seeing or examining plaintiff, and with no independent knowledge of plaintiff's condition.

However, as the trial court recognized, the asserted liability of the state defendants was based on conduct of their employees, in particular defendant Norman, that was not supervised by any physician. Further, even if we were to assume that the "captain of the ship" doctrine extended beyond the operating room and that at least some of the employ-

ees' negligent conduct arguably fell within the scope of a physician's supervision, the state defendants did not request an instruction directing the jury to determine whether the negligent conduct of a physician, or negligent conduct under the supervision of a physician, caused any of plaintiff's injuries and, if so, to allocate fault separately for such conduct.

Therefore, in the circumstances presented here, we find no error in the trial court's conclusion that the state defendants could be held liable under *respondeat superior* for all damages resulting from the negligence of their employees, including that of the individual defendants.

IV.

On cross-appeal, plaintiff contends the trial court erred in dismissing his 42 U.S.C. § 1983 claims against the individual defendants. In the circumstances presented here, we agree.

 State officials sued in their "official" capacities are outside the class of "persons" subject to liability for money damages under 42 U.S.C. § 1983. Even local government entities cannot be held liable for the acts of an employee sued in an "official" capacity unless the entity's "policy or custom" played a part in the violation. *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *see also Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

 In contrast, any state or local government official, even though acting "under color of state law," may be sued in a "personal," or "individual," capacity under 42 U.S.C. § 1983 for money damages. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).

Unraveling the distinction between § 1983 suits brought against state officials in "official" and "personal" capacities "continues to confuse lawyers and confound ... courts." *Kentucky v. Graham, supra*, 473 U.S. at 165, 105 S.Ct. at 3105, 87 L.Ed.2d at 121. The confusion results in part because of a subtle

but critical distinction between two separate uses of the phrase.

On the one hand, the Supreme Court has used the phrase "official capacity" to describe the capacity in which the state official must have inflicted the claimed injury in order for the official's action to fall within the scope of § 1983. As it observed in *West v. Atkins,* 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40, 49–50 (1988):

> The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' ... *Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law.* (emphasis added)

On the other hand, the phrase is also used to describe the capacity in which the state official is sued:

> State officers sued for damages in their official capacity are not 'persons' for purposes of the suit because they assume the identity of the government that employs them.... By contrast, officers sued in their personal capacity come to court as individuals. A government official in the role of person-capacity defendant thus fits comfortably within the statutory term 'person.'

*Hafer v. Melo, supra,* 502 U.S. at 27, 112 S.Ct. at 362, 116 L.Ed.2d at 310.

While the Supreme Court has observed that the phrase is "best understood" as a reference to the capacity in which the state officer is sued, *see Hafer v. Melo, supra,* 502 U.S. at 26, 112 S.Ct. at 362, 116 L.Ed.2d at 310, it has not expressly disapproved use of the phrase also to describe the required actions of the state officer being sued.

Of course, it is preferable for a plaintiff, in the caption or elsewhere in the complaint, to plead the capacity in which a defendant is sued. *See Hafer v. Melo, supra.* However, only a minority of federal circuit courts have concluded that the failure to do so requires dismissal of a § 1983 claim, and the conclu-

sion has been based on the perception that the Eleventh Amendment operates as a substantive limitation of the subject matter jurisdiction of the federal courts. *See Biggs v. Meadows,* 66 F.3d 56 (4th Cir.1995). That concern is not present when a § 1983 claim is commenced in state court.

We conclude the preferable approach, at least in actions in our state courts, is that taken by the majority of the federal circuit courts: If, as here, the complaint does not expressly identify the capacity in which a state officer is being sued, the failure to do so does not necessarily require dismissal of a § 1983 claim. Rather, in such circumstances, a court must then look to the substance of the claims, the relief sought, and the course of the proceedings to determine whether an individual defendant is sued in a personal or official capacity. *See Biggs v. Meadows, supra; Pride v. Does,* 997 F.2d 712 (10th Cir.1993).

We further note that, in determining whether the trial court properly dismissed the complaint, the plaintiff is entitled to the benefit of all favorable inferences that may be drawn from the allegations stated. *See Biggs v. Meadows, supra; see also First Interstate Bank v. Central Bank & Trust Co.,* 937 P.2d 855 (Colo.App.1996); *Holland v. Board of County Commissioners,* 883 P.2d 500 (Colo.App.1994).

Here, in stating his claims against the individual defendants, plaintiff asserted as follows:

> Each and every of the acts of Defendants alleged herein were done by Defendants, and each of them, not as individuals, but under the cover and pretense of the statutes, regulations, customs, and usages of the State of Colorado, Department of Corrections, and under the authority of their office as officials and employees of said Colorado Department of Corrections.

In dismissing plaintiff's § 1983 claims, the trial court apparently relied in part on this language, noting in particular the allegation that defendants' actions were taken "under the authority of their office as officials and employees of the said Colorado Department of Corrections." However, this allegation

merely tracks language the United States Supreme Court has itself used to describe the type of acts of a defendant that fall within the scope of § 1983's requirement that those acts be taken "under color of state law."

In contrast, plaintiff did not assert that the individual defendants were acting in accordance with a governmental policy or custom and no such indicia were indicated on the face of the complaint. This indicates the suit was brought against the individual defendants in their personal capacities. *See Biggs v. Meadows, supra.*

Further, plaintiff in his claim for relief under § 1983 specifically sought both compensatory and exemplary damages against the individual defendants. Because these remedies are not available to a plaintiff suing a state or suing a person solely in an "official" capacity, the fact they are sought is indicative that plaintiff was suing defendants in their personal capacity. *See Biggs v. Meadows, supra; Pride v. Does, supra; Shabazz v. Coughlin,* 852 F.2d 697 (2d Cir.1988); *cf. Kentucky v. Graham, supra.*

The course of proceedings is of limited value here because the individual defendants included their motion to dismiss in their answer. After it was granted, the claims were no longer a part of the proceedings. Nevertheless, it is worth noting that, because the issue arose early in the proceedings, the individual defendants could not have claimed any unfair prejudice, such as surprise, if the trial court had permitted the § 1983 claims to proceed against them. Indeed, they included in their initial affirmative defenses the following:

> As to the individual defendants, the claims are barred by the doctrines of official immunity and qualified immunity which protect these defendants from civil liability for damages because plaintiffs can not show that defendants violated a well established constitutional right of which a reasonable person in the defendants' positions would have been aware. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

While "official immunity" is thus mentioned, it is within the context of asserting the defense of qualified immunity—a defense to a claim for money damages against a state officer sued in a personal, not official, capacity. *See Biggs v. Meadows, supra* (because qualified immunity is available only in a personal capacity suit, the assertion of that defense indicates that the defendant interpreted the plaintiff's action as being against him personally); *cf. Shabazz v. Coughlin, supra.*

In sum, considering the complaint in context and as a whole, together with the course of proceedings, we conclude plaintiff sufficiently stated and pursued § 1983 claims against the individual defendants in their "personal" or "individual" capacities. *See Biggs v. Meadows, supra; Pride v. Does, supra; Shabazz v. Coughlin, supra; see also Houston v. Reich,* 932 F.2d 883 (10th Cir. 1991).

## V.

Plaintiff next asserts the trial court incorrectly applied § 13–80–103(1)(c), the one-year statute of limitations for suits against law enforcement authorities, to dismiss both the § 1983 claim and the negligence claim plaintiff brought against defendant Farrow. We conclude the trial court erred in applying § 13–80–103(1)(c) to dismiss the claim brought against defendant Farrow under § 1983, but that any error in applying the statute to dismiss the negligence claim against him was harmless.

Plaintiff filed his complaint more than one year but less than two years after he suffered his injuries. Defendants moved to dismiss all claims against defendant Farrow based on the one-year statute of limitations. Plaintiff responded that §§ 13–80–102(1)(a) and 13–80–102(1)(g), C.R.S.1997, the two-year statutes of limitations for tort claims and for claims brought pursuant to a federal statute, should apply.

The trial court held that, because defendant Farrow was a law enforcement officer, the appropriate limitation period was one year. Consequently, the court granted the motion to dismiss both claims brought against defendant Farrow.

Section 13–80–102, C.R.S.1997, provides in pertinent part as follows:

(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within two years after the cause of action accrues, and not thereafter:

(a) Tort actions, including but not limited to actions for negligence ...

. . . .

(g) All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute. . . .

In contrast, the pertinent part of § 13–80–103, C.R.S., 1997, provides as follows:

(1) The following civil actions, regardless of the theory upon which suit is brought, or against whom suit is brought, shall be commenced within one year after the cause of action accrues, and not thereafter:

. . . .

(c) All actions against sheriffs, coroners, police officers, firefighters, national guardsmen, or any other law enforcement authority. . . .

■■■ As to the claim under § 1983, both federal and state courts have recognized not only the breadth of this "uniquely federal remedy" and the corresponding necessity for a uniform limitation period within each jurisdiction, but also the Supreme Court's admonition that the appropriate limitation period for § 1983 claims is that period generally applicable to personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Workman v. Jordan*, 32 F.3d 475 (10th Cir.1994); *Board of County Commissioners v. Sundheim*, 926 P.2d 545 (Colo.1996). Hence, in Colorado the applicable statute of limitations for § 1983 actions, even those asserted against law enforcement officers, is the two-year limitation period of § 13–80–102(1)(g). The trial court therefore erred in applying a one-year limitation period to dismiss the claim against defendant Farrow. *See Hunt v. Bennett*, 17 F.3d 1263 (10th Cir.1994); *Dillingham v. University of Colorado*, 790 P.2d 851 (Colo. App.1989); *see also Blake v. Dickason*, 997 F.2d 749 (10th Cir.1993); *Stump v. Gates*, 777 F.Supp. 808 (D.Colo.1991); *Mucci v. Fal-* *con School District*, 655 P.2d 422 (Colo.App. 1982).

■■■ As to the trial court's dismissal of the negligence claim against defendant Farrow, we need not address the merits of plaintiff's argument. Reversal is necessary only if the claimed error affects a substantial right of the parties or is inconsistent with substantial justice. C.R.C.P. 61; *Tincombe v. Colorado Construction & Supply Corp.*, 681 P.2d 533 (Colo.App.1984).

Here, plaintiff obtained a judgment against the state defendants in the amount of $150,-000. Pursuant to § 24–10–114(1)(a), that is the maximum total amount that plaintiff is entitled to recover "from *one or more* public entities *and public employees* ... [f]or any injury to one person in any single occurrence." (emphasis added) *See also State v. DeFoor*, 824 P.2d 783 (Colo.1992); *Lee v. Colorado Department of Health*, 718 P.2d 221 (Colo.1986) (statute evidences legislative intent to limit the amount of the tort victim's award on the basis of the injury suffered in a single occurrence).

Plaintiff on appeal has pointed to no prejudice resulting from the dismissal of the state tort claim against defendant Farrow. Indeed, counsel for plaintiff acknowledged in oral argument that, if the judgment obtained against the state defendants were upheld, any error in dismissing the negligence claim against defendant Farrow would be harmless. Thus, because we have upheld that judgment, it is unnecessary to address the merit's of plaintiff's contention.

However, because the § 1983 claim against defendant Farrow has no similar limitation on the damages recoverable, and because, under 42 U.S.C. § 1988 (1994), attorney fees may also be recovered if plaintiff succeeds on the § 1983 claim, the same cannot be said about the dismissal of that claim. Hence, the cause must be remanded for reinstatement of plaintiff's § 1983 claim against defendant Farrow.

VI.

Plaintiff's final contention is that the trial court erred in reducing the actual judgment against the state defendants to $150,000. He

argues that, while his "recovery" may be so limited, the court should have entered judgment without reduction but noted the limitation of recovery. We are not persuaded.

 Plaintiff points to § 24–10–114(5), C.R.S.1997, which provides that, notwithstanding the limitation on the maximum amounts that may be recovered from a public entity, a judgment may be claimed and rendered against the state in a greater amount if the General Assembly authorizes payment of all or a portion of the judgment that exceeds the otherwise maximum amount. A claimant must present "proof of judgment" in the greater amount.

However, the supreme court in *Lee v. Colorado Department of Health, supra,* 718 P.2d at 225, expressly held that "the limitations on *recovery* set forth in § 24–10–114 serve as a limit on the jurisdiction of the court to enter *judgment* in an amount greater than the limits imposed by the Act." (emphasis added) *See also DeCordova v. State of Colorado,* 878 P.2d 73 (Colo.App.1994).

Further, the trial court here eventually entered an order, proposed by plaintiff, verifying and confirming the amount of the verdict awarded and stating that the judgment was reduced to $150,000 because of § 24–10–114(1)(a). We conclude that such an order is a sufficient "proof of judgment" for purposes of § 24–10–114(5). Hence, we find no error in the manner in which the trial court reduced the judgment in accordance with § 24–10–114(1)(a).

The judgment in favor of plaintiff and against the state defendants in the amount of $150,000 is affirmed. The trial court's dismissal of plaintiff's § 1983 actions against the individual defendants is reversed, and the cause is remanded for further proceedings.

PLANK, J., concurs.

DAVIDSON, J., concurs in part and dissents in part.

Judge DAVIDSON concurring in part and dissenting in part.

I agree that § 13–20–602, C.R.S.1997, can be read strictly as requiring that a certificate of review be filed only for a licensed professional named as a party. I also agree that it is neither absurd nor unjust to provide to professional persons statutory protection against expensive and time-consuming malpractice claims that ultimately are determined to be without basis.

In my view, however, the application of the statute was intended to be broader.

A statute must be construed in a manner that gives effect to the legislative purpose underlying its enactment and that achieves a just and reasonable result consistent with that purpose. It must be construed as a whole, taking into account the nature of the problem addressed by the General Assembly and the statutory construction that best reflects the legislative objectives. *Tate v. Industrial Claim Appeals Office,* 815 P.2d 15 (Colo.1991).

In the late 1980's, numerous state legislatures reacted to a perceived rise in frivolous malpractice claims by enacting statutes that required plaintiffs to file certificates of review or affidavits in order to ensure that such claims were, or could be, supported by an expert opinion that the standard of care in the profession had been violated. *See, e.g.,* Ga.Code Ann. § 9–11–9.1(a) (1987) ("in any action for damages alleging professional malpractice, the plaintiff shall be required to file with the complaint an affidavit of an expert"); *Dozier v. Clayton County Hospital Authority,* 206 Ga.App. 62, 424 S.E.2d 632 (1992).

Section 13–20–601, et seq., C.R.S.1997, is the version enacted in Colorado. It applies the certificate of review filing requirement to "every action for damages or indemnity based upon the alleged professional negligence [of a licensed professional.]" Section 13–20–602(1), C.R.S.1997. The Supreme Court has stated that the purpose of the requirement is "to expedite the litigation process in cases filed against licensed professionals and to prevent the filing of frivolous actions in this area." *Martinez v. Badis,* 842 P.2d 245, 251 (Colo.1992).

A claim against an employer under the doctrine of *respondeat superior* is derivative in nature; it is based entirely on the acts or omissions of employer's employee and agents. *See Arnold v. Colorado State Hospi-*

*tal,* 910 P.2d 104 (Colo.App.1995); *CJI–Civ.3d* 8:2 (1988) (under the doctrine of *respondeat superior,* any act or omission of the agent is, in law, the act or omission of the employer).

Here, plaintiff's claim was entitled "nursing malpractice," and was based solely upon an allegation of defendant Norman's professional negligence. However, although the nurse, the "named professional," was dismissed as a defendant specifically because of plaintiff's failure to file a timely certificate of review, the identical claim proceeded against the state defendants under ·a theory of *respondeat superior* without any certification by any expert that the nurse's actions violated the appropriate standard of care.

I do not think that this result was intended by the General Assembly when it enacted the certificate of review provision. I view the legislative purpose for the certificate of review requirement to include the prevention of baseless professional malpractice actions, not merely the protection of individual defendants from the consequences of such actions. And, to accomplish this, a failure to file a timely certificate of review pertaining to the alleged malpractice of a particular licensed professional also should require dismissal of a derivative, *respondeat superior* claim against the professional person's employer. *See Dozier v. Clayton County Hospital Authority, supra* (affidavit required for respondeat superior claim because such claim is based upon negligence of a professional).

Accordingly, although I agree with the majority's reversal of the dismissal of plaintiff's claims under 42 U.S.C. § 1983 (1994), I disagree with its determination that the trial court properly denied the state defendants' motion to dismiss plaintiff's *respondeat superior* claim for failure to file a timely certificate of review. And, because the trial court also correctly applied the one-year statute of limitations to dismiss the negligence claim against defendant Farrow, I would reverse the malpractice judgment against the state defendants.