Gretchen M. **SHELTON** and Carroll Shelton, Plaintiffs–Appellees and Cross–Appellants,

v.

**PENROSE–ST. FRANCIS HEALTHCARE SYSTEM, a Colorado corporation, Defendant–Appellant and Cross–Appellee.**

No. 96CA1074.

Colorado Court of Appeals, Div. II.

April 16, 1998.

As Modified on Denial of Rehearing June 11, 1998.

Certiorari Granted Nov. 30, 1998.

Joe Orell, Colorado Springs, for Plaintiffs–Appellees and Cross–Appellants

Long & Jaudon, P.C., Michael T. McConnell, Christine A. Craigmile, Denver, for Defendant–Appellant and Cross–Appellee

Opinion by Judge CRISWELL.

Defendant, Penrose–St. Francis Healthcare System (hospital), appeals from a judgment entered on a jury verdict finding that licensed nurses on its staff negligently caused injury to plaintiff Gretchen May Shelton. The hospital asserts that the trial court erred in refusing to dismiss plaintiff's complaint for her failure to file a certificate of review, as required by § 13–20–602, C.R.S. 1997. We agree and reverse.

In 1982, plaintiff underwent a total hip replacement surgery following a fracture to her left hip. In 1988, she fell and fractured the left femur around the hip prosthesis. This caused the hip prosthesis to become loose and unstable; it often dislocated spontaneously.

In 1992, a second hip replacement surgery was performed in the hospital. Her treating surgeon testified as an expert witness for her that, during surgery, he discovered that her bones had become extremely soft. He testified that, although he exercised reasonable care during this surgery, he fractured plaintiff's femur. Likewise, during yet a third hip replacement surgery performed about a week later, her femur was again fractured without negligence on anyone's part. This surgeon testified that, altogether, plaintiff had sustained some six fractures to her femur over the course of about five years.

At trial, this physician also testified that, after the first surgery in 1992, he had fitted

her with a brace designed to prevent a posterior dislocation and that, after this surgery, but before she had left the hospital, he discovered that she had suffered such a dislocation. According to the hospital, this testimony was inconsistent with x-rays taken shortly after the discovery of this dislocation, as well as with this surgeon's pre-trial deposition testimony that it was an anterior dislocation, which the brace was not designed to prevent, rather than a posterior dislocation, that plaintiff sustained after this surgery.

Nevertheless, it is undisputed that, during the course of post-surgery physical therapy, the brace had been removed and had not been replaced. Thereafter, plaintiff sat in a chair near her bed and, later still, was lifted by nurses from this chair to her bed without replacement of the leg brace.

Plaintiff's complaint was based upon the hypothesis, and the expert professional evidence presented would support the inference, that the nurses improperly lifted plaintiff without her brace and that this action resulted in her hip dislocation.

Plaintiff's complaint was filed in October 1993, and her single claim of negligence was based upon this alleged improper lifting. She did not name the nurses as defendants, but sought recovery of damages solely against the hospital, based upon *respondeat superior*.

Section 13–20–602(1), C.R.S.1997, provides that, in "every action ... based upon the alleged negligence ... of a licensed professional," the plaintiff or her attorney must, within 60 days after service of a copy of the complaint, file a "certificate of review." That certificate must declare that plaintiff's "attorney has consulted a person who has expertise in the area of the alleged negligent conduct" and that that person has reviewed the pertinent documents and, based upon such review, has concluded "that the filing of the claim ... does not lack substantial justification." Section 13–20–602(3)(a), C.R.S.1997.

The identity of such person need not be disclosed to the adverse party, but the court may require the disclosure of that person's identity to it so that it may "verify the content" of the certificate. Section 13–20–602(3)(a), C.R.S.1997.

According to § 13–20–602(4), C.R.S.1997:

The failure to file a certificate of review in accordance with [§ 13–20–602(1) ] *shall* result in the dismissal of the complaint.... (emphasis added)

This statute applies in those instances in which "expert testimony would be necessary to establish a prima facie case." Section 13–20–601, C.R.S.1997. *See Martinez v. Badis,* 842 P.2d 245 (Colo.1992). Whether it applies to a claim against a hospital, based upon *respondeat superior,* is open to question. *See Nieto v. State,* 952 P.2d 834 (Colo.App. 1997) (cert. granted March 23, 1998). However, because the parties both in the trial court and here have assumed that it applies to these circumstances, we will also assume that it is applicable.

When plaintiff filed her complaint in October 1993, she did not accompany it with the required certificate, nor did she did file one within the required 60 days. In May 1994, therefore, more than seven months after the complaint was filed, the hospital moved to dismiss her complaint pursuant to § 13–20–602(4).

When plaintiff responded to this motion in June, she asserted that the statute was inapplicable because she was relying upon the doctrine of *res ipsa loquitur* and that she would need no expert testimony to establish a prima facie case. In addition, before the trial court ruled upon the hospital's motion to dismiss in December 1994, plaintiff provided copies of written reports from registered nurses both of whom asserted that they had examined the facts and were of the opinion that plaintiff's injuries resulted from the nurses improperly lifting plaintiff without her brace.

Significantly, however, one of these reports is dated June 1994, some eight months after plaintiff's complaint was filed and after the hospital's motion to dismiss was filed, and the other was prepared in December 1994. Further, neither in these reports nor elsewhere in the record is there any representation made that counsel for plaintiff consulted with

*either* of these experts before plaintiff's complaint was filed or within 60 days thereafter.

Nevertheless, the trial court denied the hospital's motion, concluding that, because plaintiff might be able to rely upon *res ipsa loquitur*, she might be able to establish a prima facie case without the need for expert testimony. In addition, because plaintiff's counsel entertained the good faith belief that expert testimony might not be necessary and because he had provided the experts' reports to the hospital, the court relieved plaintiff of the necessity of filing such a certificate in this case.

The hospital argues, however, that the record fails to support either of the trial court's conclusions. We agree.

■ First, we reject plaintiff's argument that providing a copy of an expert's report to the hospital in June 1994 was the "functional equivalent" of the filing of a certificate under the statute.

■ Section 13–20–602 is not a discovery statute. On the contrary, that statute, by its express terms, makes clear that a plaintiff need not provide even the *identity* of the consultant to the adverse party. Further, other provisions govern the disclosure of the identity and the substance of any opinion of an expert who is to be called at trial. *See* C.R.C.P. 16 and 26. Such disclosures would be necessary even if § 13–20–602 did not exist.

Rather, the purpose of the statute is to require consultation by a plaintiff or her counsel with an expert in the appropriate field before or shortly after a complaint is filed against a licensed professional. The filing of the certificate represents proof of such consultation and proof that counsel for plaintiff has received professional advice that the institution or maintenance of an action against the professional would not lack substantial justification under § 13–17–102(4), C.R.S.1997.

We do not suggest that plaintiff's case here did, in fact, lack substantial justification. However, the mere fact that a plaintiff may, during the course of trial preparation, establish that the claim for relief alleged has sound professional opinion to support it, does not, at least by itself, furnish "good cause" to relieve such a plaintiff from the statutory obligation imposed by § 13–20–602. And, as we have noted, this record contains nothing from which it can be concluded that plaintiff's counsel consulted with an appropriate professional until some time after the hospital filed its motion to dismiss.

■ Likewise, we reject plaintiff's assertion that her failure to file the statutory certificate was excused because her counsel entertained the good faith belief that *res ipsa loquitur* might be applicable to her claim of negligence. She argues that, because application of this doctrine would not require the presentation of expert testimony, § 13–20–602 was inapplicable to her claim.

■ It has been emphasized that it is only in unusual circumstances that a medical malpractice claim can be proven without the presentation of expert medical opinion to establish the proper standard of care against which the professional's conduct is to be measured. *See Rosenberg v. Grady*, 843 P.2d 25 (Colo.App.1992); *Boigegrain v. Gilbert*, 784 P.2d 849 (Colo.App.1989).

■ *Res ipsa loquitur* applies to a malpractice claim only "when it is judicially determined that a particular unexplained occurrence creates a prima facie case of negligence without proof of *specific* misconduct." If applicable, the proof of the circumstances necessary for application of this doctrine "takes the place of evidence of [specific] negligence." On the other hand, the doctrine does not apply if the evidence establishes that a "*specific* act of negligence was the only likely cause of harm." *Kitto v. Gilbert*, 39 Colo.App. 374, 380, 570 P.2d 544, 548 (1977) (emphasis supplied).

In at least two instances, it has been suggested that *res ipsa loquitur* cannot be applied to a medical malpractice claim unless the circumstances are such that lay persons could conclude, without the aid of expert testimony, that the injury in question could not have occurred but for the negligence of one or more of the involved professionals. *See Mudd v. Dorr*, 40 Colo.App. 74, 574 P.2d 97 (1977) (cottonoid sponges used during sur-

gery left in spine); *Kitto v. Gilbert, supra* (tube to anesthesia machine became disconnected during surgery).

More recent opinions, however, have recognized that the doctrine may be applicable, if the other necessary conditions for its application are present, even though medical testimony is required to establish that the injury would not normally have occurred absent negligence of *some* sort. *See Miller v. Van Newkirk,* 628 P.2d 143, 146 (Colo.App.1980) ("Where, as here, it cannot be inferred that the injury normally does not occur without negligence, expert testimony on that issue is necessary before *res ipsa loquitur* can be applied."); *Holmes v. Gamble,* 624 P.2d 905 (Colo.App.1980), *aff'd,* 655 P.2d 405 (Colo. 1982).

Hence, the mere fact that the doctrine may be applicable does not, at least in all cases, mean that § 13–20–602 is not applicable. *See Bilawsky v. Faseehudin,* 916 P.2d 586 (Colo.App.1995).

Here, the trial court ultimately determined that *res ipsa loquitur* was inapplicable, refused to instruct upon the doctrine, and sent the case to the jury based on the expert testimony of specific negligent acts of the nurses. And, plaintiff does not assert that this determination was erroneous.

Plaintiff's surgeon testified that it was his opinion that plaintiff's hip dislocation resulted from a break in her trochanter bone, although he refused to express an opinion as to when this occurred. However, given his testimony that plaintiff's bones were so brittle that the femur had previously cracked during surgery without negligence, no lay person could determine that the trochanter was broken as a result of negligence, without some expert testimony to support that determination.

That evidence was supplied here by the surgeon's description of the leg brace placed upon plaintiff and of its purpose and by the expert nurse's testimony that plaintiff was lifted both improperly and without the brace. Hence, even if it were concluded that *res ipsa loquitur* might be applicable here, expert testimony was required to support the claim that injury would not have occurred

but for some act of negligence. Clearly, therefore, § 13–20–602 applied to plaintiff's claim for medical malpractice.

As we have emphasized, it is only in the most clear and palpable of cases that a claim for medical malpractice can be established without the use of expert testimony; the great majority of such cases will require such evidence. *Martinez v. Badis, supra.* Further, this state's public policy, as expressed in § 13–20–602, is to require a prospective plaintiff to consult with an appropriate expert and to be assured that a claim for professional negligence, if asserted, will have a factual and rational basis.

■ Given these considerations, we conclude that a plaintiff who commences and maintains litigation against a licensed professional without engaging in the type of consultation contemplated by the statute does so at his or her peril. If, as here, such a plaintiff induces the trial court to err in concluding that no certificate of review is required, any resulting judgment favorable to plaintiff may be subject to reversal. Any other conclusion would render the trial court's determination of the issue well-nigh nonreviewable. Given our conclusion in this respect, we need not address plaintiff's cross-appeal.

The judgment is reversed, and the cause is remanded to the trial court with directions to dismiss plaintiff's complaint in accordance with § 13–20–602(4).

JONES, J., concurs.

TAUBMAN, J., dissents.

JUDGE TAUBMAN dissenting.

Because I believe, *inter alia,* that plaintiffs, Gretchen M. and Carroll Shelton, substantially complied with the certificate of review statute, I would affirm the judgment of the trial court.

In adopting the certificate of review statute, § 13–20–602, C.R.S.1997, "the General Assembly has created an interrelated series of procedural mechanisms to encourage efficient determination of disputes about whether the testimony of an expert is necessary to establish a particular claim of professional negligence." *Martinez v. Badis,* 842 P.2d 245, 250 (Colo.1992). One purpose of the statute is to avoid unnecessary costs in de-

fending professional negligence claims. The statute is also intended to prevent the filing of frivolous cases. *See Hane v. Tubman,* 899 P.2d 332 (Colo.App.1995).

The first procedural mechanism established by the certificate of review statute provides that:

> [I]n every action for damages or indemnity based upon the alleged professional negligence of . . . a licensed professional, the plaintiff's or complainant's attorney shall file with the court a certificate of review for each . . . licensed professional named as a party . . . within sixty days after the service of complaint, counterclaim, or cross claim against such person unless the court determines that a longer period is necessary for good cause shown.

Section 13–20–602(1), C.R.S.1997.

Section 13–20–602(3), C.R.S.1997, specifies that a certificate of review shall be executed by the attorney for the plaintiff or complainant declaring:

> (I) That the attorney has consulted a person who has expertise in the area of the alleged negligent conduct; and
>
> (II) That the professional who has been consulted pursuant to subparagraph (I) of this paragraph (a) has reviewed the known facts, including such records, documents, and other materials which the professional has found to be relevant to the allegations of negligent conduct and, based on the review of such facts, has concluded that the filing of the claim, counterclaim, or cross claim does not lack substantial justification within the meaning of § 13–17–102(4).

In addition, the statute sets forth two procedures a party may use when the party bringing the negligence claim has not filed a certificate of review. First, pursuant to § 13–20–602(2), C.R.S.1997, if the licensed professional defending the claim believes that an expert is necessary to prove the claim of professional negligence, the defense may move the court for an order requiring the filing of such certificate. Alternatively, a party may file a motion to dismiss based upon the failure of another party to file a certificate of review. Section 13–20–602(4),

C.R.S.1997 ("The failure to file a certificate of review in accordance with this section shall result in the dismissal of the complaint, counterclaim, or cross claim.").

In *Martinez v. Badis, supra,* the supreme court recognized that some claims of professional negligence do not require expert testimony. In such circumstances, if a defendant has moved to dismiss or moved to require a plaintiff to file a certificate of review after the sixty-day period has elapsed, the plaintiff may demonstrate that no expert testimony is required. Further, if the defendant files a motion to dismiss, the plaintiff may demonstrate that good cause exists for failure to comply with the sixty-day period.

The issue to be decided here is different from that presented in *Martinez:* What procedure should be followed in the event that a plaintiff believes that no expert testimony is necessary to prove a claim, but nevertheless provides information from an expert in response to a motion to dismiss?

In my view, under such circumstances, the motion to dismiss should be denied if the information so provided substantially meets the requirements of the statute.

When interpreting a statute, we look initially to its language for guidance. If the language is plain and unambiguous, our task is accomplished by giving effect to the commonly accepted meaning of the words appearing in the statute. *Regional Transportation District v. Voss,* 890 P.2d 663 (Colo. 1995). Also, a statute must be construed as a whole, and courts must endeavor to give reasonable meaning to all its provisions. *Martinez v. Badis, supra.*

In interpreting the intent of the General Assembly, we must presume that it intended a just and reasonable result. *State Engineer v. Castle Meadows, Inc.,* 856 P.2d 496 (Colo. 1993).

When the General Assembly uses the word "shall," it usually has a mandatory connotation. However, our appellate courts have often applied a substantial compliance standard to measure whether the direction of a statute containing the word "shall" has been carried out. *See Fabec v. Beck,* 922 P.2d 330 (Colo.1996) (substantial compliance is the ap-

propriate standard to apply in interpreting statutes concerning the right to initiative and referendum); *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996) (substantial compliance standard applies to content of notice required, but not 180–day requirement, under Governmental Immunity Act); *Montero v. Meyer,* 795 P.2d 242 (Colo. 1990) (rule of substantial compliance provides an acceptable level of statutory compliance in voting rights context); *People v. Campbell,* 742 P.2d 302 (Colo.1987) (substantial compliance used to measure adequacy of defendant's request under Uniform Mandatory Disposition of Detainers Act).

I would invoke this principle and, thus, would analyze the Sheltons' actions on a substantial compliance basis.

Here, the Sheltons filed their complaint on October 6, 1993. Defendant timely answered and filed a motion to dismiss on May 23, 1994.

Three weeks later, the Sheltons filed their response to defendant's motion to dismiss. Therein, they asserted: (1) they did not believe an expert was necessary because they were relying on the doctrine of *res ipsa loquitur;* (2) they also did not believe an expert was necessary because defendant's negligence could be easily explained without expert testimony; and (3) in any event, they had consulted an expert who had reviewed the circumstances of Gretchen Shelton's injury and concluded that the proper standard of care was not met by the nurses transferring her from a chair to a bed and that her injury was caused "because of incorrect lifting technique and improper transfer technique utilized by the nursing staff ... on 4/28/92."

In its order denying defendant's motion to dismiss, the trial court agreed with all three of the Sheltons' contentions. Thus, the court ordered that the Sheltons were not required to introduce expert testimony in support of their claims based on negligence because of their *res ipsa loquitur* theory and their theory of proving negligence without the need for expert testimony, apart from *res ipsa loquitur.*

Significantly, the court also noted that the Sheltons had in fact endorsed an expert on nursing practice "who is expected to testify that the conduct and the manner in which the defendant's employees transferred the plaintiff, Gretchen May Shelton, from the chair to the bed, fell below the standard of care and resulted in the injuries sustained by her." Accordingly, the trial court denied defendant's motion to dismiss, concluding that the Sheltons had shown good cause for failure to file a certificate of review within the prescribed sixty-day statutory period. However, the trial court did not order the Sheltons to file a certificate of review.

Even if I were to assume that the trial court erred in concluding that this was the type of professional negligence case for which expert testimony was not required, I would, nevertheless, conclude that the Sheltons substantially complied with the requirements of the certificate of review statute. The information provided by the Sheltons in response to the motion to dismiss gave defendant all the information it would have received pursuant to a certificate of review. *See* § 13–20–602(3), C.R.S.1997. The response to the motion to dismiss clearly indicated that the Sheltons' attorney had consulted an expert in the area of the alleged negligent conduct. Furthermore, the expert's report, attached to the motion to dismiss, and provided to the defendant one week earlier as part of a motion to compel discovery, indicated that the expert had reviewed the known facts, and had concluded that the Sheltons' claims were meritorious in that defendant's employees had acted negligently, and that such negligent conduct had caused Gretchen Shelton's injuries.

The statutory purpose of assuring a defendant in a medical malpractice case that a plaintiff had promptly and adequately investigated his or her claim was also satisfied here. Defendant was provided with a copy of the Sheltons' expert's report within two weeks after defendant had filed its motion to dismiss. At that point, some eight months after the lawsuit was commenced, some discovery had taken place, but significant amounts of additional discovery occurred after the trial court denied the defendant's motion to dismiss. Thus, there was little, if

any, prejudice to the defendant as a result of the procedure employed here.

Finally, even if the trial court should have required the Sheltons to file a certificate of review after it found that there was good cause for their not having done so earlier, such defect in the trial court's ruling was harmless error. As noted above, the defendant obtained in the Sheltons' response to the motion to dismiss all the information that it would have obtained pursuant to a certificate of review. At that point, ordering the plaintiffs to file a certificate of review would have been merely a ministerial act that would not have provided any additional information to the defendant.

Thus, because the Sheltons provided information concerning their expert to the defendant promptly after the filing of defendant's motion to dismiss, I would hold that they substantially complied with the certificate of review statute and I would affirm the jury verdict in their favor.

There are two additional reasons for affirming the jury verdict. First, although not addressed by either party on appeal, in *Nieto v. State of Colorado*, 952 P.2d 834 (Colo.App. 1997) (*cert. granted*, March 23, 1998), another division of this court concluded that § 13–20–602 does not require that a certificate of review be filed in an action against a hospital based upon *respondeat superior*. Thus, the trial court's judgment can be affirmed on that basis alone.

Second, the question of whether an expert is necessary is a mixed question of law and fact. *See State Board of Medical Examiners v. McCroskey*, 880 P.2d 1188 (Colo.1994). This initial determination is within the discretion of the trial court. Therefore, a reviewing court should reverse only if the trial court's ruling is manifestly arbitrary, unreasonable, or unfair. *See Hock v. New York Life Insurance Co.*, 876 P.2d 1242 (Colo. 1994).

Notwithstanding the fact that the trial court later concluded that the jury instruction on *res ipsa loquitur* was inappropriate, the trial court's initial determination that a certificate of review was not necessary was based upon the information available to the court at that time and, in my view, was not manifestly arbitrary, unreasonable, or unfair.

Finally, I note that the result reached by the majority creates the anomalous effect of dismissing a case that does have merit, when the very purpose of the statute is to dismiss those that lack merit.

Accordingly, I would affirm the judgment of the trial court.